Michele M. Myer (#13815)
myer.michele@dorsey.com
**DORSEY & WHITNEY LLP**
111 S. Main Street, Suite
2100 Salt Lake City, UT
84111 Telephone: (801)
579-7406
Fax: (801) 933-7373

Bruce R. Ewing (Pro Hac Vice Forthcoming)
ewing.bruce@dorsey.com
**DORSEY & WHITNEY LLP**
51 West 52nd Street New York, NY 10019
Telephone: (212) 415-9200

*Attorneys for Plaintiffs*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF UTAH**

| | |
|---|---|
| UYTE, LLC and SEG HOCKEY, LLC, <br><br> Plaintiffs, <br><br> v. <br><br> MAMMOTH HOCKEY, LLC, <br><br> Defendant. | **COMPLAINT** <br><br> Civil Action No. _____ <br><br> JURY TRIAL DEMANDED |

**COMPLAINT FOR DECLARATORY JUDGMENT**

Plaintiffs Uyte, LLC ("Uyte") and SEG Hockey, LLC ("SEG Hockey") (together, "Plaintiffs") bring this complaint against Mammoth Hockey, LLC ("Defendant") and allege as follows.

## Introduction

1.      At the conclusion of a highly publicized, fan-inclusive process that took place for more than one year, Plaintiffs adopted the trademark UTAH MAMMOTH for their National Hockey League ("NHL") team located in Salt Lake City, Utah.  UTAH MAMMOTH was first announced as a possible name for the team in April 2024, revealed as one of three names that were under final consideration for the team name in January 2025, and then announced as the actual team name in early May 2025.  Since that time, the UTAH MAMMOTH trademark has been used in commerce to identify professional hockey services and a wide range of goods that have gained substantial public recognition throughout the United States.  Fans of the team have embraced the team's name, and the UTAH MAMMOTH trademark has received great publicity and is a valuable asset belonging to Plaintiffs.

2.      Upon information and belief, Defendant is a specialty seller of high-end hockey bags in which amateur hockey players can carry their hockey gear.  Defendant asserts that it has used the term "Mammoth" as a trademark for such bags since 2014.

3.      While Plaintiffs were in the process of selecting their team name, Defendant voiced public support for the selection of UTAH MAMMOTH.  And as recently as April 2025, Defendant was so enthusiastic about the selection of UTAH MAMMOTH as the team name that it even approached Plaintiffs about a possible collaboration between the parties.

4.      But in June 2025, Defendant reversed course, taking the position that the adoption of UTAH MAMMOTH as the team name, announced in May, was objectionable and violative of Defendant's alleged trademark rights.  Plaintiffs have told Defendant that they disagree with its position, and that the use of UTAH MAMMOTH with professional hockey team services and

related goods is permissible. But Defendant has not relented, and has recently threatened litigation in some unknown forum, at some unknown time.

5. The uncertainty created by Defendant's actions, which has persisted for months, with no action as of yet, has become intolerable. Given the actual controversy that has arisen between the parties because of Defendant's unfounded allegations of trademark infringement, unfair competition and related trademark violations, Plaintiffs have brought this action seeking a declaration under the U.S. Declaratory Judgment Act that their use of the UTAH MAMMOTH trademark is fully compliant with relevant federal and state law, and not violative of any trademark rights Defendant may possess.

## Parties, Jurisdiction and Venue

6. Plaintiff Uyte is a limited liability company organized under the laws of the State of Delaware with its principal place of business located in Salt Lake City, Utah.

7. Plaintiff SEG Hockey is a limited liability company organized under the laws of the State of Delaware with its principal place of business located in Salt Lake City, Utah.

8. Upon information and belief, Defendant is a limited liability company organized under the laws of the State of Oregon with its principal place of business located in Portland, Oregon.

9. This is an action for a declaratory judgment pursuant to 28 U.S.C. §§ 2201 *et seq*. An actual justiciable controversy exists between Plaintiffs and Defendant that warrants the issuance of a judgment declaring that Plaintiffs, by their advertisement, promotion, sale, offering for sale and marketing of professional ice hockey-related services and goods, under the trademark UTAH MAMMOTH, have not infringed or diluted, or otherwise violated the trademark or other intellectual property rights, of Defendant under U.S. or applicable state law.

3

10. This action involves claims arising under the U.S. Trademark Act of 1946, 15 U.S.C. §§ 1051 *et seq*. (the "Lanham Act"). This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1338 and 2201, and has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a).

11. Upon information and belief, this Court has personal jurisdiction over Defendant because it purposefully directs its activities to the State of Utah and/or purposefully avails itself of the privilege of conducting activities within the State of Utah, such that the exercise of jurisdiction by this Court over Defendant is reasonable. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b).

12. The value of the UTAH MAMMOTH trademark rights at issue in this proceeding substantially exceeds the value of $75,000.

## Factual Allegations

### A. Plaintiffs and the UTAH MAMMOTH Trademark

13. The UTAH MAMMOTH team is a professional hockey and a member of the NHL. Plaintiffs operate the team and own the UTAH MAMMOTH trademark and related marks used in connection with the team's operations.

14. The UTAH MAMMOTH team is located in Salt Lake City, Utah, and the team has played its home hockey games in Salt Lake City since its inaugural season in 2024. During that first season in 2024-25, the team used the name UTAH HOCKEY CLUB. However, the team also made clear in public announcements commencing in April 2024 that it intended to adopt a different, permanent primary team name, and that the name would be selected from a list of eight possibilities on which the team's fans could vote. One of those possibilities for the team's name was "Mammoth," and Uyte filed a trademark application for the mark UTAH

MAMMOTH with the United States Patent and Trademark Office ("PTO") on April 23, 2024. That filing was the subject of extensive media coverage. *See, e.g.*, https://www.fox13now.com/sports/nhl-in-slc/utah-nhl-team-adds-2-new-names-to-trademark-list and https://bleacherreport.com/articles/10118344-utah-nhl-team-files-trademarks-for-mammoth-ice-yetis-more-possible-nicknames.

15. Between May of 2024 and February of 2025, Plaintiffs conducted three public surveys among fans regarding the selection of the team's name. UTAH MAMMOTH appeared in all of those surveys as a potential name for the team. The surveys also received substantial media coverage. *See* SEG Reveals Survey To Name Utah's NHL Team

16. After the selection process was complete, on May 7, 2025, Plaintiffs announced that, from that time forward, the primary name of the Utah professional hockey team would be UTAH MAMMOTH. That announcement was also the subject of substantial media coverage. *See* https://www.espn.com/nhl/story/_/id/45036623/utah-picks-mammoth-mascot-end-yearlong-search; https://www.deseret.com/sports/2025/05/07/utah-nhl-franchise-name/. The investment of time, energy and resources expended by Plaintiffs in selecting, and then developing, the UTAH MAMMOTH brand has been substantial.

17. Since the adoption of the UTAH MAMMOTH trademark, Plaintiffs and/or their exclusive licensees have used that mark extensively to market, offer, advertise and promote goods and services relating to the UTAH MAMMOTH professional ice hockey team. In addition to functioning as a service mark for professional hockey services and related activities, the UTAH MAMMOTH trademark is used with many different types of goods, including jerseys, t-shirts, posters, pucks, water bottles, blankets, pennants and related products. These goods are widely sold online through authorized retailers, as well as through the team's store

located in the Delta Center in Salt Lake City, Utah and the NHL's online store accessible at

https://shop.nhl.com/utah-mammoth/t-3891458094+z-904672-1005627369.

18.     Plaintiffs also use the UTAH MAMMOTH trademark on signs displayed at the team's home arena, in various promotions, in ticket sales, including on the Utah Mammoth's website https://www.nhl.com/utah/tickets/, and on various social media platforms, including X, Instagram, Facebook, YouTube, and TikTok.

19.     The "Mammoth" component of the UTAH MAMMOTH trademark is used with one or both of two additional elements: (i) the term UTAH; and (ii) the distinctive mammoth logo design shown below, which features the colors blue, black and white.



20.     Plaintiffs have made a conscious decision to use one or both of these two components of their trademark with the "Mammoth" component to create a distinctive impression in the marketplace, and to distinguish the UTAH MAMMOTH from other various sports businesses, of which there are many, that use the term "mammoth" in connection with various goods and services.  The following are examples of how the UTAH MAMMOTH trademark currently appears on goods in the marketplace:








21. At the Delta Center arena, the UTAH MAMMOTH logo appears as follows:



22. The adoption of the UTAH MAMMOTH trademark has generated substantial, positive publicity for the team, and the UTAH MAMMOTH trademarks are used in connection with the services of a professional hockey team and related goods.

B. **Defendant and Its Trademark Claims**

23. Upon information and belief, Defendant is based in Portland, Oregon and sells specialty hockey equipment bags primarily, as well as a limited number of other goods, under the designation "Mammoth," usually accompanied by a red mammoth logo shown below:



Defendant's specialty hockey bags sold under its "Mammoth" designation, with the aforementioned logo, are shown below:



24. Upon information and belief, Defendant does not maintain and has never filed any trademark application for the "Mammoth" designation. Therefore, Defendant's rights are based on any common law rights it would be able to establish, which would require a demonstration of use in commerce.

25. At least as early as June 7, 2024, Defendant was aware of the surveys conducted by the team as part of the process of selecting UTAH MAMMOTH as the team name. Indeed, Defendant commented on its Facebook page on June 7, 2024 that, of the proposed names for the Utah Hockey Club, "[w]e're pretty partial to [the Utah Mammoth name]," and circled "Mammoth," as shown below:



26. On April 14, 2025, prior to the announcement of the official name, Erik Olson, Defendant's co-founder, sent a LinkedIn direct message to Rachel Moffitt, assistant to the President of Hockey Operations for the team, stating that "it would be cool to talk about a possible collaboration" if the hockey team ended up choosing the name "Mammoth."



27. Thereafter, Ms. Moffitt and Mr. Olson had the following exchange:




28. Despite never objecting to the use of the name UTAH MAMMOTH during the survey process – and even proposing a collaboration – on June 10, 2025, Defendant's attorneys sent a letter to Plaintiffs alleging that Plaintiffs' use of the UTAH MAMMOTH mark violated Defendant's trademark rights and demanding they cease use. A copy of Defendant's June 10 letter is attached as Exhibit A. On June 23, 2025, Plaintiffs responded to the June 10 letter, noting that Defendant had previously expressed support for the UTAH MAMMOTH name; that the parties' marks, goods, and services are different; and that numerous third parties use "Mammoth" as a trademark for bags and related goods and services. A copy of Plaintiffs' June

23 letter is attached as Exhibit B. On July 31, 2025, over a month later, Defendant sent another letter to Plaintiffs, in which Defendant claimed that there was a likelihood of confusion between the parties' marks, and signaled that it planned to initiate legal action, although no complaint was provided, no forum was specified, and no date for such a lawsuit was supplied. A copy of Defendant's July 31 letter is attached as Exhibit C.

29. The claims made by Defendant in its June 10 and July 31 letters are baseless. Defendant never once objected to the UTAH MAMMOTH name during the extensive, highly publicized selection process. To the contrary, Defendant expressed support for the name and even proposed a collaboration. Moreover, the parties' marks are different in appearance, sound, and commercial impression. Without limitation, Defendant does not use the term "Utah" as part of its designation. The parties' logos are also significantly different, such that the overall impression of the marks is sufficiently different to avoid consumer confusion.

30. The parties' goods and services are also not related. Defendant's specialty equipment bags are very different than professional hockey goods and services, such as those marketed under the UTAH MAMMOTH trademark. Equipment vendors do not provide professional hockey services. Accordingly, it is unlikely consumers would expect any relationship between the parties to exist. Furthermore, Defendant's customers are hockey players, who are sophisticated with regard to hockey and readily understand the difference between a well-known professional hockey team and the vendors who provide equipment for amateur players.

31. The differences between the parties' goods and services explain how Defendant has used its "Mammoth Hockey" designation for over ten years without any evidence of consumer confusion with numerous hockey teams and other sports-related third parties that use

the term "Mammoth" or similar terms as part of their names. Those third parties include college hockey teams, youth hockey teams, and providers of goods (including athletic bags) and services, relating to lacrosse and other sports.

32. Notwithstanding the abundance of third-party uses that, at a minimum, substantially narrow the scope of whatever trademark rights Defendant claims to own, as well as the differences between the parties' respective marks, goods, and services, the correspondence from Defendant in which it has threatened to assert a panoply of federal and state trademark and other claims against Plaintiffs has created a reasonable apprehension on the part of Plaintiffs that they will face legal action if they offer professional hockey services and goods to consumers under the UTAH MAMMOTH trademark. Indeed, Defendant's threat to initiate litigation against Plaintiffs, without saying where or when such a lawsuit might be filed, has left Plaintiffs laboring with the proverbial Sword of Damocles over their heads, and they have been operating for months afflicted with substantial uncertainty about whether, or when, Defendant might assert its unfounded trademark claims.

33. In light of the actual controversy between the parties, and in order to alleviate the substantial uncertainty caused by Defendant's actions, Plaintiffs request that the Court grant them declaratory relief clarifying that their use of UTAH MAMMOTH does not violate any of Defendant's claimed trademark rights under federal or state law.

## COUNT I

### Declaratory Judgment

34. Plaintiffs repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

35. Defendant has claimed that Plaintiffs' advertising, promotion and offering of professional ice-hockey related services and goods under the UTAH MAMMOTH trademark

infringes and dilutes Defendant's claimed rights in its "Mammoth Hockey" designation, and otherwise violates Defendant's alleged intellectual property rights under federal and state law.

36. Plaintiffs' advertising, promotion and offering of professional ice-hockey related services and goods under the UTAH MAMMOTH trademark neither infringes nor dilutes Defendant's claimed rights in its "Mammoth Hockey" designation, nor do such activities on the part of Plaintiffs otherwise violate Defendant's alleged intellectual property rights under federal and state law.

37. Accordingly, Plaintiffs seek a declaratory judgment under 28 U.S.C. §§ 2201 *et seq.* that Plaintiffs have not, by their advertising, promotion and offering of professional ice-hockey related services and goods under the UTAH MAMMOTH trademark, infringed, diluted or otherwise violated the federal or common law rights, if any, of Defendant in its "Mammoth Hockey" designation under applicable federal and/or state law.

WHEREFORE, Plaintiffs pray that this Court enter a judgment:

1. Declaring that Plaintiffs have not, by their advertising, promotion and offering of professional ice-hockey related services and goods under the UTAH MAMMOTH trademark, infringed, diluted or otherwise violated the federal or common law rights, if any, of Defendant in its "Mammoth Hockey" designation under applicable federal and/or state law; and

2. Granting such other and further relief as the Court deems just and proper.

## **JURY DEMAND**

Plaintiffs hereby demand a trial by jury on all claims, counterclaims and defenses so triable.

Dated:  August 1, 2025

*/s/ Michele M. Myer*
Michele M. Myer
myer.michele@dorsey.com
DORSEY & WHITNEY LLP
111 South Main Street, Suite 2100
Salt Lake City, UT 84111-2176
(801) 933-7360

Bruce R. Ewing (*pro hac vice forthcoming*)
ewing.bruce@dorsey.com
DORSEY & WHITNEY LLP
51 West 52nd Street
New York, NY 10019
(212) 415-9200

*Attorneys for Plaintiffs*