R. Jeremy Adamson (12818)
Catherine M. Maness (16885)
BUCHALTER
A Professional Corporation
60 E. South Temple, Suite 1200
Salt Lake City, UT  84111
(801) 401-8625
jadamson@buchalter.com
cmaness@buchalter.com

*Attorneys for Mammoth Hockey, LLC*

Gerald W. Griffin (*admitted pro hac vice*)
Leonardo Trivigno (*admitted pro hac vice*)
Meredith Spelman (*admitted pro hac vice*)
Jodutt Basrawi (*admitted pro hac vice*)
Janice J. Kwon (*admitted pro hac vice*)
CARTER LEDYARD & MILBURN LLP
28 Liberty Street
New York, New York 10005
212-238-8610
griffin@clm.com
trivigno@clm.com
spelman@clm.com
basrawi@clm.com
kwon@clm.com

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH

| | |
|---|---|
| UYTE, LLC and SEG HOCKEY, LLC, <br><br> Plaintiffs, <br><br> vs. <br><br> MAMMOTH HOCKEY, LLC <br><br> Defendant. | **ANSWER AND COUNTERCLAIMS** <br><br> Case No.: 2:25-cv-00639-DB <br><br> Judge David Barlow |

Mammoth Hockey, LLC ("Defendant") hereby submits this Answer and Counterclaims to the Complaint of Plaintiffs Uyte, LLC's ("Uyte") and SEG Hockey, LLC's ("SEG") (collectively, the "Plaintiffs"), filed on August 1, 2025, and responds, alleges and avers as follows. Any allegations in the Complaint that are not explicitly admitted herein are denied. Headings and subheadings contained in the Complaint are not substantive allegations to which an answer is

1

required. To the extent those headings and subheadings are substantive allegations to which an answer is required, Defendant denies the allegations.

## INTRODUCTION

1.      Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 1, except denies Plaintiffs have any trademark rights in UTAH MAMMOTH and admits that Plaintiffs publicly announced UTAH MAMMOTH as one of twenty possible names for its NHL hockey team in April 2024 and as their team's new name in May 2025.

2.      Denies the allegations contained in paragraph 2, except admits that Defendant has manufactured and sold hockey-related goods bearing the mark MAMMOTH HOCKEY, including hockey bags, and that Defendant was the first to commercially use the mark over the past eleven years and in forty-seven states, except Hawaii, Mississippi, and North Dakota, and Canada, and continues to do so today.

3.      Denies the allegations in paragraph 3.

4.      Denies the allegations in paragraph 4, except admits that Defendants' assert Plaintiffs' use of UTAH MAMMOTH violates Defendant's trademark rights.

5.      Denies the allegations in paragraph 5, except admits that Plaintiffs filed this action seeking a declaration under the U.S. Declaratory Judgment Act that their use of UTAH MAMMOTH does not violate Defendant's trademark rights.

## PARTIES, JURISDICTION AND VENUE

6.      Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 6.

7.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 7.

8.     Admits the allegations contained in paragraph 8.

9.     Denies the allegations in paragraph 9, except admits that Plaintiffs filed this action for a declaratory judgment pursuant to 28 U.S.C. §§ 2201 *et seq.*

10.     Paragraph 10 contains legal conclusions to which no answer is required. To the extent an answer is required, Defendant denies the allegations but does not contest subject matter jurisdiction in this judicial district for the limited purpose of this action only.

11.     Paragraph 11 contains legal conclusions to which no answer is required. To the extent an answer is required, Defendant denies the allegations but does not contest personal jurisdiction in this judicial district for the limited purpose of this action only.

12.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 12, except denies Plaintiffs have any trademark rights in UTAH MAMMOTH.

## FACTUAL ALLEGATIONS

13.     Denies the allegations in paragraph 13, except admits that Plaintiffs purport to own and operate the NHL hockey team in Utah, which entered the NHL last season under the name "Utah Hockey Club" and that Plaintiffs publicly announced they changed the team's name to UTAH MAMMOTH in May 2025.

14.     Denies the allegations in paragraph 14, except admits that Plaintiffs' NHL hockey team entered the NHL last season under the name "Utah Hockey Club" and plays its home games in Salt Lake City, Utah, and that Plaintiffs publicly announced UTAH MAMMOTH as one of

twenty possible new names for the team in April 2024 and filed trademark applications for all twenty names in April and May 2024.

15.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 15.

16.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 16, except admits that Plaintiffs publicly announced UTAH MAMMOTH as their team's new name on May 7, 2025.

17.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 17, except denies Plaintiffs have any trademark rights in UTAH MAMMOTH.

18.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 18, except denies Plaintiffs have any trademark rights in UTAH MAMMOTH.

19.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 19, except denies Plaintiffs have any trademark rights in UTAH MAMMOTH and the accompanying logo of a mammoth's head.

20.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 20, except denies Plaintiffs have any trademark rights in UTAH MAMMOTH and the accompanying logo of a mammoth's head.

21.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 21.

22.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 22, except denies Plaintiffs have any trademark rights in UTAH MAMMOTH.

23.     Denies the allegations contained in paragraph 23, except admits that Defendant is based in Portland, Oregon and has manufactured and sold hockey-related goods bearing the trademarks MAMMOTH HOCKEY and the accompanying logo of a mammoth's head since 2014.

24.     Paragraph 24 of the Complaint states a legal conclusion to which no answer is required. To the extent an answer is required, Defendant denies the allegations, except admits that it has not filed an application to register its MAMMOTH HOCKEY trademark.

25.     Denies the allegations contained in paragraph 25, except admits that on June 7, 2024, Defendant posted on its Facebook and Instagram pages that it was "partial" to the name "Mammoth" and respectfully refers the Court to Defendant's posts for the contents therein.

26.     Denies the allegations contained in paragraph 26, except admits that on April 14, 2025, Erik Olson sent Rachel Moffitt a message on LinkedIn inquiring about Plaintiffs' intention to use its trademark and respectfully refers the Court to the message and the contents therein.

27.     Admits the allegations contained in paragraph 27.

28.     Denies the allegations contained in paragraph 28, except admits that on June 10, 2025, Defendant's counsel sent Plaintiffs a cease-and-desist letter, on June 23, 2025, Plaintiffs' counsel sent a letter responding to the cease-and-desist letter, and on July 31, 2025, Defendant's counsel sent a letter responding to Plaintiffs' counsel's letter, and respectfully refers the Court to those letters and the contents therein.

29.     Denies the allegations contained in paragraph 29.

30.    Denies the allegations contained in paragraph 30.

31.    Denies the allegations contained in paragraph 31.

32.    Denies the allegations contained in paragraph 32.

33.    Denies the allegations contained in paragraph 33.

## COUNT I

### Declaratory Judgement

34.    Defendant incorporates its preceding responses as if set forth fully herein.

35.    Denies the allegations contained in paragraph 35, except admits that Defendant asserts Plaintiffs' use of UTAH MAMMOTH violates Defendant's trademark rights.

36.    Denies the allegations contained in paragraph 36.

37.    Denies the allegations contained in paragraph 37, except admits that Plaintiffs seek a declaratory judgment pursuant to 28 U.S.C. §§ 2201 *et seq.*

## PRAYER FOR RELIEF

The prayer for relief does not require a response. To the extent a response is required, Defendant denies that Plaintiffs are entitled to a judgment for any of the relief requested.

## AFFIRMATIVE AND OTHER DEFENSES

Defendant asserts the following affirmative and other defenses without assuming any burden of production or proof that it would not otherwise bear.

### First Affirmative Defense

Plaintiffs' claims are barred, in whole or in part, because the Complaint fails to state a claim upon which relief can be granted.

### Second Affirmative Defense

Plaintiffs' claims are barred, in whole or in part, by their use of UTAH MAMMOTH and the accompanying logo of a mammoth's head in bad faith.

### Third Affirmative Defense

Plaintiffs' claims are barred, in whole or in part, by the equitable doctrines of unclean hands and estoppel and/or other equitable doctrines.

### Additional Defenses

Mammoth Hockey respectfully reserves the right to assert any and all additional defenses as may be determined to be applicable during the course of discovery.

### COUNTERCLAIMS

Defendant, by undersigned counsel, hereby alleges as and for its counterclaims against Plaintiffs as follows:

### JURISDICTION AND VENUE

1.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1338(a) and 1367 because this action arises under the laws of the United States, including 15 U.S.C. § 1125(a); and supplemental jurisdiction over Defendant's state law claims pursuant to 28 U.S.C. § 1367.

2.      This Court, in the alternative, has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a) because this action is a civil action wherein the matter in controversy exceeds the sum of Seventy-Five Thousand Dollars ($75,000.00), exclusive of interest and costs, and is between citizens of different states.

3.      This Court has personal jurisdiction over Plaintiffs pursuant to 18 U.S.C. § 2334 because Plaintiffs reside in this District.

4.      Venue is proper in this District pursuant to 28 U.S.C. § 1391, because Plaintiffs reside in this District and a substantial part of the acts or omissions giving rise to the claims alleged herein occurred in this District.

## PARTIES

5.      Defendant Mammoth Hockey, LLC is a corporation organized and existing under the laws of the state of Oregon, with a principal place of business located at 3625 SE 21st Ave, Portland, Oregon 97202.

6.      On information and belief, Plaintiff SEG is a corporation organized and existing under the laws of the state of Delaware, with its principal place of business at 1420 South 500 West, Salt Lake City, Utah 84115.

7.      On information and belief, Plaintiff Uyte is a corporation organized and existing under the laws of the state of Delaware, with its principal place of business at 1420 South 500 West, Salt Lake City, Utah 84115.

## BACKGROUND

### A. Defendant Owns the Mark and Logo

8.      Defendant is a small business in Portland, Oregon that, since 2014, manufactures and sells hockey-related goods, including highly durable hockey bags.

9.      Defendant's hockey bags are designed to survive years of intense use under extreme conditions: they are made of heavy-duty resilient materials including 18-ounce truck tarp, pack cloth silver lining, seatbelt shoulder straps, and brass zippers with red paracord pulls.

10.     Defendant manufactures, markets and sells its hockey-related goods bearing the mark MAMMOTH HOCKEY (the "Mark") and an accompanying logo of a mammoth's head (the "Logo") designed by the Defendant's co-founder as shown below:



11.     Defendant chose "MAMMOTH" for its name and for its Mark because it signifies strength, endurance and resilience due to the Ice Age animal's size and ability to survive harsh conditions, which aptly describes Defendant's highly durable hockey bags.

  

12.     Defendant has marketed and sold its hockey-related goods for the past eleven years under the Mark and Logo in forty-seven states, except for Hawaii, Mississippi, and North Dakota, and Canada, primarily through internet advertising and online sales, including on its website, which provides details of their pricing and specifications, as well as videos demonstrating their use. Defendant's website has been fully active since 2014 and has received hundreds of thousands of views.  *See* https://www.mammoth-hockey.com.

13.     From 2014 until May 7, 2025, when Plaintiffs saturated the market with its "UTAH MAMMOTH" mark, an internet search for "mammoth hockey bags" would yield as its first result the Defendant's Website.

*14.*    Defendant also markets and promotes its products bearing the Mark and Logo on social media accounts it maintains on Instagram, Facebook and You Tube, which feature Defendant's products and demonstration videos. *See* https://www.facebook.com/mammothbags/; https://www.instagram.com/mammothhockey/?hl=en; https://www.youtube.com/@mammothhockey3228

15.    Defendant also actively promotes its business in the national and international hockey community by, among other things, sponsoring various hockey teams and tournaments in multiple locations, including in Oregon, Washington, Minnesota and Canada, where Defendant's Mark and Logo are prominently displayed.   At these events, the Defendant's co-founders or members of the teams Defendant sponsors hand out coupon cards for Mammoth Hockey's products, as well as stickers, hats, and postcards, all bearing the Mark and Logo as shown below, to promote its brand and products.

  

16.    Defendant's highly durable hockey bags have received excellent reviews from prominent figures in the hockey community, which have also been viewed by hundreds of thousands of people. For example, Jeremy Rupke of the "Coach Jeremy" YouTube account stated that Defendant's hockey bags are "definitely the best bags [he's] seen quality-wise on the market." Chris Kibui of Hockey Tutorial stated that they are "the last hockey bag you'd ever need to buy."

Hockey World Blog reported that their "quality of materials, the craftsmanship, and the attention to detail are all prevalent." https://www.youtube.com/live/UDX7RKlLZxQ; https://www.youtube.com/watch?v=Ew3S2IS38mY; https://www.youtube.com/watch?v=Nd-6BgNviHM; https://hockeyworldblog.com/2015/06/02/mammoth-ipa-player-bag-review/.

### B.  Plaintiffs' Failed Attempts to Change Their Team's Name

17.     In April 2024, Plaintiffs purchased the NHL hockey team formerly known as the "Arizona Coyotes" for $1.2 Billion and relocated the team to Utah. *See* https://www.forbes.com/sites/carolschram/2024/04/18/nhl-approves-arizona-coyotes-hockey-ops-move-to-new-franchise-in-utah/.

18.     The team played its first season under the temporary name UTAH HOCKEY CLUB. After purchasing the team, Plaintiffs announced that the fans would decide the team's permanent name by voting on twenty options, including UTAH MAMMOTH (the "Accused Mark"). *See* https://apnews.com/article/utah-nhl-team-name-fc2401ffb6af5620e1f9d10d48994896.

19.     In April and May 2024, Plaintiffs filed trademark applications with the USPTO for all twenty names, including the Accused Mark.

20.     In June 2024, Plaintiffs announced six finalists based on the fan's initial voting: Utah Yeti, Utah Mammoth, Utah Blizzard, Utah Venom, Utah Outlaws and Utah Hockey Club. Utah Yeti was reported to be the fan favorite. *See* https://www.nhl.com/news/utah-announces-6-finalists-for-team-name; https://www.ksl.com/article/51234156/utah-hockey-club-facing-trademark-hurdles-in-finding-permanent-name.

21.     On January 9 and 16, 2025, the USPTO rejected Plaintiffs' applications for three of the six finalists, including UTAH YETI, because of their likely confusion with existing registered trademarks. *See* Exhibit A.

22.     On January 29, 2025, Plaintiffs reported they had "moved on" from UTAH YETI because their team's merchandise had to be "ready to go" when they announced the team's new name before the upcoming season. Plaintiffs then reopened fan voting to the three remaining names: Utah Mammoth, Utah Outlaws and Utah Hockey Club. *See* https://www.espn.com/nhl/story/_/id/43615454/utah-hockey-club-hold-arena-fan-vote-pick-permanent-name-yeti-rejected-patent-office.

**C.  Plaintiffs Take Defendant's Mark and Logo and Flood the Market With Advertising and Merchandise Bearing the Accused Mark and Logo**

23.     On February 13, 2025, Plaintiffs' corporate representative reached out to a professional hockey player named Mike Lundin, who had sponsored Defendant when it launched its Mark and Logo in 2014. Plaintiffs' representative asked Mr. Lundin about Defendant, its owners, and how they could contact them. At least by then, Plaintiffs knew of Defendant's use of the Mark and Logo for the past eleven years.

24.     Plaintiffs never contacted Defendant about their intentions to use the Accused Mark.

25.     On April 24, 2025, Defendant's co-owner, Erik Olson, contacted Plaintiffs' representative to inquire about Plaintiffs' intentions to use the Mark.  Mr. Olson offered to discuss Plaintiffs' use of the Mark if they ultimately chose the Accused Mark as the team's new name. Plaintiffs' corporate representative responded stating Plaintiffs would "definitely keep this partnership in mind should things end up moving in that direction." Complaint at ¶ 27.

12

26.     Days later, on April 30, 2025, Plaintiffs leaked they had already decided to rename the team UTAH MAMMOTH. *See* https://www.reuters.com/sports/utah-hc-officials-mum-after-mammoth-mascot-leak-2025-04-30/.

27.     On May 7, 2025, Plaintiffs officially announced the team's new name. *See* https://www.nhl.com/utah/news/utah-s-nhl-franchise-officially-named-the-utah-mammoth-release-5-7-25.

28.     On May 7, 2025, Plaintiffs opened their only physical store at the Delta Center so fans could purchase merchandise bearing the Accused Mark and Logo. Plaintiffs' corporate representative explained that it took an "Ice Age worth of time" to have the vast selection of merchandise available for their fans. Plaintiffs also mounted signs and banners around the arena to market the Accused Mark and Logo. *See* https://www.fox13now.com/sports/utah-hockey-club/first-look-at-official-utah-mammoth-merchandise-for-fans.

 

29.     Plaintiffs then flooded the market with merchandise, including hockey bags, bearing the Accused Mark and Logo, through internet advertising and online sales. *See e.g.,* https://shop.nhl.com/utah-mammoth/bags/utah-mammoth-jardine-mega-pack-hockey-bag/t-2702234661+d-83558834+f-9123317128+z-9-1326499790?utm_medium=cse&_s=ak1944nhl-pla&sku=210394535&targetid=targetid&utm_campaign=22730184222_181810242436&gad_source=1&gad_campaignid=22730184222&gclid=Cj0KCQjw0NPGBhCDARIsAGAzpp2x9_QN

Uypv6axTDUbr0hsIFpRkcYKRWfw1yBfvofXo5_H0mThCxCcaAp81EALw_wcB;

https://www.fanatics.com/nhl/utah-mammoth/backpacks-and-bags/utah-mammoth-jardine-mega-pack-hockey-bag/o-2406+t-3857344616+d-6400885+f-238412978+z-9-482160195?utm

_medium=cse&_s=GPA_CA&sku=210394535&targetid=targetid&utm_campaign=2255766551

3_179199773749&gad_source=1&gad_campaignid=22557665513&gclid=Cj0KCQjw0NPGBh

CDARIsAGAzpp0ksmMI0jNJ8h1z92uheDzhYL41IR5gxjWf7GlwYqn5FtvxNl95tFgaArzEEAL

w_wcB;   https://www.lids.com/nhl-utah-mammoth/backpacks-and-bags/utah-mammoth-jardine-

mega-pack-hockey-bag/o-4606+t-5091563505+d-1788109+f-252601451+z-9-1401737525?

utm_medium=cse&_s=GPA-ak19kv30-Lids&sku=210394535&utm_campaign=22581396415

_186619414784&gad_source=1&gad_campaignid=22581396415&gclid=Cj0KCQjw0NPGBhC

DARIsAGAzpp3EpqUjRXQa8eUFRjoQOZZvbWGzv8pIVlWEIzOo99pkQHomWlLfSD4aAm

yYEALw_wcB.



30.    On May 7, 2025, the USPTO rejected Plaintiffs' application for UTAH

MAMMOTH finding the "UTAH" portion of the mark merely geographically descriptive of the

region. The USPTO required Plaintiffs to disclaim "UTAH", leaving "MAMMOTH" as the single

dominant term of the Accused Mark.  *See* Exhibit B.

**D.  Defendant Demands Plaintiffs Cease and Desist Their Use of Its Mark**

31.     On June 10, 2025, Defendant's counsel wrote Plaintiffs and explained Defendant's prior use of the Mark and Logo and how the Accused Mark would confuse consumers into thinking that Defendant was associated with Plaintiffs' team. Counsel advised Plaintiffs that their activities may constitute trademark infringement, false advertising and unfair competition under the Lanham Act (as well as under common law). Counsel demanded, among other things, that Plaintiffs immediately cease and desist from all use of the Accused Mark and Logo.  Dkt. No. 2, Exhibit A.

32.     On June 23, 2025, Plaintiffs responded, confirming that Plaintiffs knew of Defendants' Mark and Logo, but were confident they did not infringe Defendant's trademark rights.  Dkt. No. 2, Exhibit B.

33.     On July 31, 2025, Defendant's counsel explained again Defendant's trademark rights to the Mark and Logo and asked Plaintiffs' counsel if they would accept service of a complaint for infringement. Dkt. No. 2, Exhibit C.

34.     On August 1, 2025, Plaintiffs filed the Complaint in this action.

**E.   Plaintiffs' Sudden Flooding Of The Market With The "UTAH MAMMOTH" Mark Has Caused Actual Confusion And Will Cause Defendant Irreparable Harm**

35.     Plaintiffs' use of the Accused Mark and Logo to market and sell hockey bags and other hockey-related goods, will confuse the Defendant's current and future customers, and irreparably harm the Defendant's business.

36.     Since Plaintiffs began using the Accused Mark and Logo on May 7, 2025, Defendants' co-owner has been involved in, or was informed about, two separate instances of actual confusion where individuals believed Defendant was affiliated with Plaintiffs' hockey team.

37.    Mr. Olson was personally wearing a Mammoth Hockey T-shirt after a game in a recreational Over-35 league at the Winterhawks Skating Center in Beaverton, Oregon, when another player in the league  asked if his shirt was from the Utah Mammoth.

38.    In a separate incident, a teammate on one of Mr. Olson's hockey teams at Sherwood Ice Arena in Sherwood, Oregon, told him that a player on the bench with him at a morning pickup game asked him if his Mammoth Hockey water bottle bearing Defendant's Mark and Logo was from the new Utah Mammoth team.

39.    If the Plaintiffs are permitted to continue to use the Accused Mark and Logo, the Defendant's image and reputation will continue to suffer. Defendant is known to be a source of highly durable hockey bags. The Defendant's ability to control the messaging of the Defendant's brand and quality of how its products are made, sold, and perceived, will be compromised. This is something that Defendant takes extremely seriously and built its brand on.  Should the quality of the Plaintiffs' bags bearing the Accused Mark and/or Logo be less than those of the Defendant, then customers and potential customers would mistakenly believe the Defendant is responsible for such production. Should a consumer have a bad experience with hockey-related goods purchased from Plaintiffs, the Defendant's reputation and good will is vulnerable to harm.

40.    Defendant will also be harmed by Plaintiffs' use of the Accused Mark and Logo because a consumer looking to purchase a product from the Defendant will mistakenly purchase that product from Plaintiffs. Such types of loss would be extremely difficult, if not impossible, to quantify, and therefore irreparably harm the Defendant.

41.    Defendant will also be harmed by the loss of business from customers and potential customers who support teams in competition with Plaintiffs' team.  Individuals who want to

purchase a hockey bag but are under the mistaken or confused belief that the Defendant is associated or affiliated with Plaintiffs' team, a rival to their preferred team, may very well refuse to purchase bags from the Defendant.

42.    Furthermore, Defendant has potential plans to expand its business, which are now threatened by Plaintiffs' use of Defendant's Mark and Logo and the ensuing confusion it causes consumers.

## FIRST COUNTERCLAIM FOR RELIEF

### Lanham Act Trademark Infringement, False Designation of Origin, and Unfair Competition in Violation of § 43 of the Lanham Act, 15 U.S.C. § 1125(a))

43.    Defendant repeats and realleges the allegations set forth in paragraphs 1-42 of the Counterclaims as if those allegations had been set forth herein.

44.    The "MAMMOTH HOCKEY" and "MAMMOTH HOCKEY"-formative marks are valid and protectable marks that belong to Defendant, and to which Defendant has priority of use over Plaintiffs.

45.    The "MAMMOTH HOCKEY" and "MAMMOTH HOCKEY"-formative marks are inherently distinctive among the relevant trade and public as identifying Defendant's hockey-related goods, and as an arbitrary term, and are entitled to strong protection.

46.    Defendant is the owner of valid trademark rights in the "MAMMOTH HOCKEY" and "MAMMOTH HOCKEY"-formative marks, which Defendant has used prominently and continuously for more than ten years and has come to be known as Mammoth Hockey in the hockey industry.

17

47.     Plaintiffs' adoption and use the Accused Mark and Logo is willful, lacking in good faith, and with the knowledge that such use would or is likely to cause confusion and deceive others.

48.     Plaintiffs operate in the same industry as Defendant, and the aforesaid acts of Plaintiffs constitute trademark infringement, unfair competition, and false designation of origin in willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125(a), and are likely to cause, have caused, and will continue to cause confusion, mistake, or deception as to the sponsorship, affiliation, or source of Plaintiffs business and merchandise in that consumers and others are likely to believe that Plaintiffs use of the Accused Mark and Logo is legitimately connected with, or approved by, Defendant; or to cause consumers to incorrectly believe that Plaintiffs are the senior users of the Accused Marks and that Defendant is improperly using, copying, or infringing the Accused Mark.

49.     As a direct and proximate result of Plaintiffs' infringement, Defendant has suffered damages not yet fully determined, but to be established at trial.  The circumstances warrant trebling of damages and an aware of attorneys' fees, including for the willful and deliberate acts of infringement by Plaintiffs.

50.     Defendant has been, and is likely to be, substantially injured in its business, including its goodwill and reputation, resulting in lost revenues and profits, and diminished goodwill. Defendant's remedy at law is not adequate to compensate for injuries inflicted by Plaintiffs, and therefore, Defendant is entitled to temporary and permanent injunctive relief under Section 34 of the Lanham Act, 15 U.S.C. § 1116.

## SECOND COUNTERCLAIM FOR RELIEF

### Trademark Infringement under Common Law and Utah Code Section 70-3a-402.

51.    Defendant repeats and realleges the allegations set forth in paragraphs 1-50 of the Counterclaims as if those allegations had been set forth herein.

52.    The "MAMMOTH HOCKEY" and "MAMMOTH HOCKEY"-formative marks are valid, distinctive, and protectable marks that belong to Defendant, and to which Defendant has priority of use over Plaintiffs.

53.    The "MAMMOTH HOCKEY" and "MAMMOTH HOCKEY"-formative marks are inherently distinctive as an arbitrary term, and are entitled to strong protection.

54.    Defendant is the owner of valid trademark rights in the "MAMMOTH HOCKEY" and "MAMMOTH HOCKEY"-formative marks, which Defendant has used prominently and continuously for more than ten years and has come to be known as Mammoth Hockey in the hockey industry.

55.    Plaintiffs operate in the same industry, and the aforesaid acts of Plaintiffs are likely to cause, have caused, and will continue to cause confusion, mistake, or deception as to the sponsorship, affiliation, or source of Plaintiffs business and merchandise in that consumers and others are likely to believe that Plaintiffs use of the Accused Mark and Logo is legitimately connected with, or approved by, Defendant, in violation of Utah common law and Utah Code Section 70-3a-402.

56.    The aforesaid acts of Plaintiffs were undertaken willfully and with the intention of causing confusion, mistake, or deception.

57.     Defendant has suffered damages not yet fully determined, but to be established at trial.

58.     Defendant's remedy at law is not adequate to compensate for injuries inflicted by Plaintiffs, and therefore, Defendant is entitled to temporary and permanent injunctive relief.

### THIRD COUNTERCLAIM FOR RELIEF

### Unfair Competition under Common Law and Utah Code Section 13-5a-103

59.     Defendant repeats and realleges the allegations set forth in paragraphs 1-58 of the Counterclaims as if those allegations had been set forth herein.

60.     Plaintiffs' acts have been willful and with knowledge that Plaintiffs would unlawfully and unfairly be profiting from the goodwill associated with Defendant and its rights in the Mark and Logo.

61.     The aforesaid acts of Plaintiffs are likely to cause, have caused, and will continue to cause material diminution in value of Defendant's Mark and Logo in violation of Utah common law and state law, including at least Utah Code Section 13-5a-103.

62.     As a direct and proximate result of Plaintiffs' conduct, Defendant has been and is likely to be substantially injured in its business, including its goodwill and reputation, resulting in lost revenues and profits, and diminished goodwill.

63.     In addition, as a direct and proximate result of Plaintiffs' conduct, in violation of Utah state law, and upon information and belief, Plaintiffs have received substantial revenues and profits as a result of their unlawful conduct, to which they are not entitled.

64.     The aforesaid acts of Plaintiffs were undertaken willfully and with the intention of causing confusion, mistake, or deception.

65.     Defendant has suffered damages not yet fully determined, but to be established at trial.

66.     Defendant's remedy at law is not adequate to compensate for injuries inflicted by Plaintiffs, and therefore, Defendant is entitled to temporary and permanent injunctive relief.

## FOURTH COUNTERCLAIM FOR RELIEF

### Deceptive Trade Practices Under Utah Code Section 13-11a-3

67.     Defendant repeats and realleges the allegations set forth in paragraphs 1-66 of the Counterclaim as if those allegations had been set forth herein.

68.     The aforesaid acts of Plaintiffs are likely to cause, have caused, and will continue to cause has caused a likelihood of confusion or of misunderstanding as to affiliation, connection, association with, or certification by, Defendant and has thereby engaged in deceptive trade practice in violation of Utah common law and state law, including at least Utah Code Section 13-11a-3.

69.     The aforesaid acts of Plaintiffs were undertaken willfully and with the intention of causing confusion, mistake, or deception.

70.     Defendant has suffered damages not yet fully determined, but to be established at trial.

71.     Defendant's remedy at law is not adequate to compensate for injuries inflicted by Plaintiffs, and therefore, Defendant is entitled to temporary and permanent injunctive relief.

## PRAYER FOR RELIEF

WHEREFORE, Defendant respectfully requests that this Court enter judgement in its favor on its Counterclaims against Plaintiffs, and grant Defendant the following relief:

- A judgment in favor of Defendant and against Plaintiffs on all Counterclaim counts;

21

- A preliminary and permanent injunction from trademark infringement and unfair business practices by Plaintiffs;

- Damages in an amount to be determined at trial;

- Trebling of damages for willful infringement, unfair competition, and dilution;

- Exemplary and punitive damages;

- An accounting of all revenues and profits gained by Plaintiffs while engaging in the acts complained of in this Answer and Counterclaims;

- Establishing a constructive trust on all revenues and profits obtained by Plaintiffs through their wrongful acts, to be held for the benefit of Defendant;

- Allowable costs, investigative, and attorneys' fees;

- Such other and/or further relief as this Court deems just and proper.

## DEMAND FOR A JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Mammoth Hockey hereby demands a trial by jury on all claims and issues triable as of right by a jury.

Dated: September 25, 2025

**CARTER LEDYARD & MILBURN, LLP.**

/s/ Gerald W. Griffin
Gerald W. Griffin (*admitted pro hac vice*)
Leonardo Trivigno (*admitted pro hac vice*)
Meredith B. Spelman (*admitted pro hac vice*)
Jodutt M. Basrawi (*admitted pro hac vice*)
Janice J. Kwon (*admitted pro hac vice*)
CARTER LEDYARD & MILBURN, LLP
28 Liberty Street, 41st Floor
New York, NY 10005

OF COUNSEL

22

R. Jeremy Adamson (12818)
Catherine M. Maness (16885)
BUCHALTER, P.C.
60 E. South Temple, Suite 1200
Salt Lake City, UT 84111
(801) 401-8625
jadamson@buchalter.com
cmaness@buchalter.com