Michele M. Myer (#13815)
**DORSEY & WHITNEY LLP**
111 S. Main Street, Suite 2100
Salt Lake City, UT
Telephone: (212) 415-9200
Fax: (801) 933-7373
myer.michele@dorsey.com

Bruce Ewing (admitted *pro hac vice*)
**DORSEY & WHITNEY LLP**
51 West 52nd Street
New York, NY 10019
Telephone: (212) 415-9200
Fax: (801) 933-7373
ewing.bruce@dorsey.com

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH**

| | |
|---|---|
| UYTE, LLC and SEG HOCKEY, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>MAMMOTH HOCKEY, LLC,<br><br>Defendant. | **DECLARATION OF JOHN BALLARD LARSON IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR PRELIMINARY INJUNCTION**<br><br>Civil No. 2:25-cv-00639-CMR<br><br>Judge David Barlow<br>Magistrate Judge Cecilia Romero |

JOHN BALLARD LARSON declares as follows:

  1. I am the Chief Financial Officer of Plaintiff SEG Hockey, LLC ("SEG Hockey"), a position I have held since April 2024. My duties and responsibilities include the overall financial operations of SEG Hockey and its related entities. In my role as SEG Hockey's Chief Financial Officer, I am familiar with all material aspects of the company's financial operations, including the costs it has incurred in undertaking various activities, including marketing, advertising and branding, and the amounts that prospective activities like marketing, advertising and branding are expected to cost.

2. I submit this Declaration in opposition to the Motion for Preliminary Injunction filed by Defendant Mammoth Hockey, LLC. Dkt. 29-31. I am fully familiar with the facts set forth below, based either on my personal knowledge or from documents that I have reviewed. If called as a witness, I could and would testify competently under oath to the following.

3. SEG Hockey uses the trademarks UTAH MAMMOTH and a related "Mountain Mammoth" logo design (the "UTAH MAMMOTH Marks") in connection with the operation of its National Hockey League ("NHL") team – the Utah Mammoth – and related goods and services. It is my understanding that Defendant has asked the Court to enjoin SEG Hockey from all future use of the UTAH MAMMOTH Marks in connection with all goods and services. I have been asked to calculate the costs that SEG Hockey is likely to incur if the Court were to grant such relief.

4. In sum, an Order enjoining SEG Hockey from any and all use of the UTAH MAMMOTH Marks would impose extensive, burdensome, and undue financial loss. SEG Hockey's direct losses from the requested injunction we understand Defendant is requesting would exceed $7,000,000. Following are examples of the components that make up this amount:

    a. Approximately $400,000 in player jerseys and equipment purchased so far, all of which bear one or both of the UTAH MAMMOTH Marks in some way.

    b. Inventory that we understand would be subject to the injunction Defendant is seeking cost roughly $3,500,000 in terms of what is on hand, and more than $1,500,000 on order;

    c. The digital broadcast graphics package, consisting of all graphics involved with the broadcast of games, such as the onscreen score display, transition graphics, replay graphics, etc. cost approximately $250,000;

    d. Replacing the marks at center ice at Delta Center and the two rinks at the team's practice and training facility in Sandy, Utah, each of which feature the Mountain

Mammoth logo and one of which also features UTAH MAMMOTH, would cost more than $35,000 to remove, without including the necessary labor;

   e. Replacing the signs at Delta Center and the practice facility would cost approximately $200,000;

   f. The estimated cost to replace the 15.5-foot puck on Delta Center plaza that bears the UTAH MAMMOTH Marks would be $50,000; and

   g. SEG Hockey spent an estimated $100,000 to create and introduce Tusky, the team's mascot. It is important to note that we have not calculated the expected profits SEG Hockey stands to earn on sales of the inventory that would be subject to an injunction. If these profits were to be included, the calculation of the financial harm SEG Hockey expects to suffer in the event of an injunction would be far higher. So, the $7 million calculation I have provided is conservative.

  5. The approximately $7,000,000 in SEG Hockey's estimated direct losses does not take into account the losses that would be incurred by national licensees that could no longer sell the products they have manufactured if the Court were to issue an injunction.

  6. Additionally, I understand from America First Credit Union, one of the team's sponsors, that their costs to redo advertisements that have already been shot, as well as the debit cards branded with the team's marks, would be in excess of $120,000. *See* the accompanying Declaration of Christopher Armstrong, ¶ 74. Other sponsors would also incur both monetary costs and a loss of goodwill.

  7. SEG Hockey and third parties also spent significant time and effort on media day. Armstrong Dec., ¶¶ 84-85. The full value of the labor involved in media day, as well as the

value of the content created is difficult to quantify, but SEG Hockey spent $300,000 to organize and produce this event.

8.   An injunction would also cause SEG Hockey to lose a tremendous amount of goodwill.  I estimate the value of the goodwill symbolized by the UTAH MAMMOTH Marks to be in excess of $100,000,000.  This estimate is based on, among other things, Sportico's $1,440,000,000 valuation of the team as of October 1, 2025, which reflects a $440,000,000 increase from the purchase of the assets relating to the team in the Spring of 2024.  A true and correct copy of Sportico's valuation is attached as **Exhibit 1**.  The UTAH MAMMOTH Marks have received an overwhelmingly positive reception by the local and national markets, establishing the brand as a valuable addition to the NHL ecosystem.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

DATED this 28th day of October, 2025.

Signed by:
*John Ballard Larson*
A09B4D5FFF6D4EB...

John Ballard Larson

## CERTIFICATE OF SERVICE

I hereby certify that on the 30th day of October, 2025, a true and correct copy of the foregoing **DECLARATION OF JOHN BALLARD LARSON IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR PRELIMINARY** was served electronically upon all counsel of record via the Court's CM/ECF filing system.

                                                    */s/   Jacqueline Ervin*