R. Jeremy Adamson (12818)
Catherine M. Maness (16885)
BUCHALTER
A Professional Corporation
60 E. South Temple, Suite 1200
Salt Lake City, UT 84111
(801) 401-8625
jadamson@buchalter.com
cmaness@buchalter.com

*Attorneys for Mammoth Hockey, LLC*

Gerald W. Griffin (*admitted pro hac vice*)
Leonardo Trivigno (*admitted pro hac vice*)
Meredith B. Spelman (*admitted pro hac vice*)
Jodutt M. Basrawi (*admitted pro hac vice*)
Janice J. Kwon (*admitted pro hac vice*)
CARTER LEDYARD & MILBURN LLP
28 Liberty St Fl 41
New York, NY 10005
212-732-7200
griffin@clm.com
trivigno@clm.com
spelman@clm.com
basrawi@clm.com
kwon@clm.com

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH

| | |
|---|---|
| UYTE, LLC and SEG HOCKEY, LLC,<br><br>Plaintiffs,<br><br>vs.<br><br>MAMMOTH HOCKEY, LLC<br><br>Defendant. | **REPLY DECLARATION OF GERALD W. GRIFFIN IN FURTHER SUPPORT OF DEFENDANT'S MOTION FOR PRELIMINARY INJUNCTION**<br><br>Case No.: 2:25-cv-00639-DB-CMR<br><br>Judge David Barlow<br>Magistrate Judge Cecilia M. Romero |

I, Gerald W. Griffin, declare as follows:

1. I have personal knowledge of the facts stated herein, and if called upon to do so, I can truthfully and completely testify regarding this Declaration.

2. I am a member of the New York Bar and am admitted in this case *pro hac vice* representing Defendant Mammoth Hockey, LLC ("Defendant"). I am a Partner in the law firm of Carter Ledyard & Milburn LLP. This declaration (the "Reply Declaration") is made in reply to

1

Plaintiffs' Opposition to Defendant's Motion for a Preliminary Injunction (Dkt. 29; the "Motion") and in further support of the Motion.

I. **TIMELINE**

3. A timeline of events relevant to the Motion is attached hereto as **Exhibit A**. The facts supporting the timeline are set forth below citing exhibits to the initial declarations in support of the Motion (Dkt. Nos. 30 and 31; the "Olson Decl." and the "Griffin Decl.", respectively) and exhibits to this Reply Declaration.

**A. 2014 Through 2024
Defendant Established Its Common Law Trademark Rights**

4. Since at least the end of May 2014, Defendant has been operating an online social media presence through the creation and use of its Facebook and Instagram pages to market its products, which are affixed with Defendant's Mark and Logo. *See* Olson Decl. at ¶ 37 (first Instagram post was on May 23, 2014, showing Defendant's hockey bag bearing its Mark and Logo); Exhibit 10 at 167 (showing first Facebook activity on May 22, 2014, depicting Defendant's Mark and Logo).

5. On June 3, 2014, Defendant's Kickstarter Campaign was launched, depicting Defendant's Mark and Logo and marketing Defendant's Mark and Logo-bearing products. *Id.*, at ¶¶ 8-9; Exhibit 3. Defendant's Kickstarter Campaign webpage also discloses Defendant's company history, its origin, and development process for its hockey bags. *Id.*

6. In October 2014, Defendant had its first hockey bags bearing the Mark and Logo manufactured and offered for sale on its newly created company website at https://www.mammoth-hockey.com/ (the "Website"). Attached hereto as **Exhibit B** is a true and

correct copy of the Website from October 18, 2014, accessed from the Wayback Machine Internet Archive.

7. Between 2015 and 2021, after the initial launch of Defendant's original hockey bag, Defendant continued to redesign its hockey bags and added additional models of hockey bags to be manufactured and sold. *See* Olson Decl. at ¶¶ 25-29. During this time, Defendant designed, manufactured, and sold its Oglethorpe Bag, Tender Goalie Bag, the Reggie Coach/Referee Bag, and Bombay Player Bag. *Id.*

8. On February 6, 2017, Defendant registered its business as a limited liability company in the State of Oregon. *Id.*, at ¶ 7; Exhibits 1-2.

9. Between 2021 and 2024, Defendant added a new color to its Mark and Logo and new hockey bag models, which included Defendant's Duralite Goalie Bag, Duralite Player Bag, Player Bag (medium and large) and Wheeled Player Bag, all of which are still offered for sale on the Website. *Id.*, at ¶¶ 30-34; Exhibits 5-8.

### B. April 2024 to January 2025
### Plaintiffs Fail to Choose a Name for Their Hockey Team

10. On April 18, 2024, Plaintiffs purchased its hockey team upon the approval of the NHL Board of Governors for the transfer of the Arizona Coyotes to Smith Entertainment Group (SEG) in Utah for a $1.2 billion purchase price. Griffin Decl. at ¶ 3; Exhibit 1.

11. In April and May 2024, Plaintiff Uyte, LLC, filed trademark applications with the USPTO for twenty potential hockey club names, including "UTAH YETIS" and "UTAH MAMMOTH". *Id.*, at ¶ 6; Exhibit 4.

12. On May 8, 2024, Plaintiffs announced that it will hold a multi-phase fan survey with twenty name options for fans to choose Plaintiffs' new hockey team name. Attached hereto

3

as **Exhibit C** is a true and correct copy of an article posted on www.nbcbayarea.com, "Utah NHL franchise launches fan vote for team name. These are the 20 options," dated May 8, 2024.

13. On June 6, 2024, Plaintiffs commenced a second round of fan voting for the team's new name on the six finalist names: Utah Blizzard, Utah Hockey Club, Utah Mammoth, Utah Outlaws, Utah Venom, and Utah Yeti. Griffin Decl. at ¶ 8; Exhibit 6.

14. On June 7, 2024, Defendant posted on its Facebook and Instagram pages, each bearing Defendant's Mark and Logo, stating "We're pretty partial to this one," and circled the word "Mammoth" in yellow highlighting. Olson Decl. at ¶ 44.

15. "UTAH YETI" was widely reported in the press to be the favorite name choice for Plaintiffs' new hockey team. Griffin Decl. at ¶ 9; Exhibit 9.

16. In October 2024, Defendant added its Wheeled Player Bag models for sale on its Website. Olson Decl. at ¶ 34; Exhibit 8.

17. On January 9, 2025, the USPTO issued a non-final office action for "UTAH YETI" (Serial No. 98508147), refusing registration based on likelihood of confusion with existing YETI marks owned by Yeti Coolers, LLC (Registration Nos. 4948371, 4948370, 5601737, 6754934). Griffin Decl. at ¶ 11; Exhibit 9. The USPTO found that YETI was the dominant element of the mark and thus "essentially identical in sound, appearance, meaning, and commercial impression" to Yeti's registered trademarks. *Id.*, at 11. The USPTO stated, "[b]ecause the marks are confusingly similar and refer to closely related goods, consumers would be likely to mistakenly believe that the goods emanate from a single source." *Id.*, at 12.

18. After the USPTO rejected Plaintiffs' "UTAH YETIS" trademark application, Plaintiffs engaged "extensively" with Yeti Cooler Company to negotiate a coexistence agreement

but was unsuccessful. *Id.*, at ¶ 14-15; Exhibits 13-14. On January 29, 2025, Mike Maughan of SEG publicly stated: "We have engaged with Yeti coolers extensively. The NHL has also helped engage with us with them." *Id.*, Exhibit 2 at 3. Mr. Maughan further stated: "We engaged deeply with Yeti Cooler Company and worked with them over a process to see if there was some coexistence agreement that we could engage with them on. They have a unique and strong trademark on anything published Yeti or Yetis. We did not have a coexistence agreement with Yeti and therefore have decided to move on from that name." *Id.*, at ¶ 15; Exhibit 14 at 2.

### C. February 2025 to May 2025
### Plaintiffs Take Defendant's Trademarks in Bad Faith

19. Following the failure to secure rights to use YETI, Plaintiffs announced on January 28, 2024, that they will reopen fan voting to pick one of the three remaining names: Utah Mammoth, Utah Outlaws, and Utah Hockey Club. *See id.,* Exhibit 13. The fans chose Utah Mammoth in February 2025. *See* Dkt. 38, Exhibit 5 at 2.

20. On February 13, 2025, Rachel Moffitt, assistant to the President of Hockey Operations for Plaintiffs' team, contacted Mike Lundin, the professional hockey player who had previously sponsored the Defendant, inquiring about Defendant's co-founders/owners, and how she could contact Defendant. Olson Decl. at ¶ 45. Shortly thereafter, Mr. Lundin informed Defendant that Ms. Moffitt reached out to him and asked for Defendant's contact information. *Id.*, at ¶ 46.

21. After "voting revealed the fan favorite, substantial time was spent in March 2025" to further "refin[e] the branding." Dkt. 38 at ¶ 19. By April, Plaintiffs "embraced the public's choice" and made "the final decision to select UTAH MAMMOTH as the new team name." *See* Dkt. 38 at ¶¶ 19, 22.

22. Between February 13 to April 14, 2025, a total of sixty-one (61) days, Plaintiffs "considered" reaching out to Defendant, but did not do so. *See* Dkt. 38 at ¶ 37-38; *see also* Olson Decl. at ¶¶ 45-46.

23. On April 14, 2025, Defendant's co-founder/owner, Erik Olson, contacted Plaintiffs after becoming aware of the interaction between Ms. Moffitt and Mr. Lundin, stating:

> Hi Rachel, I'm Erik Olson, co-founder of Mammoth Hockey here in Portland, Oregon. I had heard through the grapevine you were asking around about our hockey bag company. If the Utah Hockey Club ends up being the Mammoth next season … then it would be cool to talk about a possible collaboration.

*Id.*, ¶ 46.

24. Ten days later, on April 24, 2025, Plaintiffs responded to Defendant's inquiry, stating, "Hi Erik, I had a chance to speak with [the President] and he said they have not reached any determinations yet but will definitely keep this partnership in mind should things end up moving in that direction." *Id.*, at ¶ 47. On that same day, Defendant responded, stating "Sounds good to me. Have a great weekend!" Dkt. 2 at ¶ 27.

25. On May 7, 2025, thirteen days after Plaintiffs informed Defendant that "they have not reached any determinations" as to Plaintiffs' new team name, and without any notice to Defendant, Plaintiffs revealed "UTAH MAMMOTH" as the permanent team identity and simultaneously flooded the hockey-related market with its products bearing the Accused Mark and Logo. *See* Olson Decl. at ¶ 48; *see also* Griffin Decl. at ¶¶ 20-22; Exhibits 17-19.

26. Shortly after Plaintiffs revealed that "UTAH MAMMOTH" was one of six final contenders for Plaintiffs' new team name, Mr. Olson began his search for legal counsel to assist with protecting Defendant's trademark rights. In May 2025, Mr. Olson contacted several law firms

through various referrals, at least one of which was conflicted, until Mr. Olson was referred to me. *Id.*, at ¶ 26.

**D. June 2025 to October 2025
Defendant Hires Counsel to Defend Its Trademark Rights**

27. As soon as my law firm was engaged, on June 10, 2025, I sent a cease-and-desist letter to Plaintiffs setting forth that: (1) Mammoth Hockey was the rightful owner of the Mammoth Hockey Mark and Logo; (2) Defendant's use of the UTAH MAMMOTH mark was highly likely to confuse consumers; and (3) that Plaintiffs should, among other things, immediately cease and desist from all use, marketing, advertisement, and/or promotion of any goods or services containing the Accused Mark. *See* Griffin Decl., Exhibit 23. I also proposed that the parties try to resolve this dispute "amicably." *Id.*, at 2.

28. Nearly two weeks later, on June 23, 2025, Plaintiffs' counsel responded to my cease-and-desist letter, claiming that "Utah Mammoth is confident [the Accused Mark] does not infringe any of [Defendant's] rights" and stated that while "Utah Mammoth is always interested in discussing opportunities with reputable parties … it has little desire to engage with entities who pursue unfounded claims," thereby communicating that Plaintiffs were uninterested in discussing resolution with Defendant. *Id.*, Exhibit 24 at 2.

29. When I received Plaintiffs' counsel's letter on June 23, 2025, all attorneys who represent Defendant in this case, myself included, were in the midst of preparing for trial before the Honorable William C. Bryson of the Federal Circuit, who was sitting by designation in the District of Delaware (*Kaneka Corporation v. Designs for Health, et al*, Case No. 21-cv-209-WCB (D. Del.)).

7

30. After the completion of the trial on July 25, 2025, on July 31, 2025, I responded to Plaintiffs' counsel's letter of June 23, 2025. Griffin Decl. at ¶ 30; Exhibit 25.

31. In response, Plaintiffs filed their Complaint in this action on August 1, 2025. *See* Dkt. 2.

32. Between August 1, 2025, the date Plaintiffs filed their Complaint (Dkt. 2) and September 25, 2025, the date Defendant filed its Answer and Counterclaims (Dkt. 28) and the Motion, about eight weeks, Defendant's counsel conducted a factually intensive investigation of Plaintiffs' use of the Accused Mark and Logo.

33. On September 30, 2025, Plaintiffs filed a request for an extension of time to respond to the Motion, "given the complex legal and factual issues raised by the Motion." Dkt. 32 at 2.

34. Plaintiffs' counsel, who has been engaged by Plaintiffs since early 2024 as lead trademark and brand counsel and prepared Plaintiffs' entrance into the NHL franchise, still required five weeks to respond to the Motion. Attached hereto as **Exhibit D** is a true and correct copy of an article from www.dorsey.com, entitled "Dorsey & Whitney Guides Utah's NHL Identity with Launch of the Utah Mammoth," dated May 19, 2025.

35. On October 30, 2025, Plaintiffs filed their opposition to the Motion. Dkt. 37.

II. **EVIDENCE OF ACTUAL CONFUSION**

36. The following are known instances of actual confusion since May 7, 2025:

A. **Actual Confusion of the Parties' Products**

   a. On October 6, 2025, Defendant received a customer message submitted through Defendant's Website contact form from its Website, stating: "I am hosting my family for Christmas this year and would like to purchase 11 tickets for the

Mammoth Hockey game on Sunday December 21st. I can only purchase a max of 10 tickets on-line and would like the seats together. There are 4 children. Can you help me with this?" Attached hereto as **Exhibit E** is a true and correct copy of the correspondence, a business record kept in the course of Defendant's regularly conducted activity of its business, received through Defendant's Website, dated October 6, 2025.

b. On November 2, 2025, a Twitter/X User (D4unioQue1ne) wrote "was searching for mammoth hockey bags but ended up directed to Utah mammoth what is this?" Attached hereto as **Exhibit F** is a true and correct copy of a Twitter/X post by D4unioQue1ne, dated November 2, 2025.

B. **Actual Confusion of the Parties' Marks**

c. On October 22, 2025, a Twitter user (gaohweht_v2) wrote, "Mf mammoth hockey let's go." Attached hereto as **Exhibit G** is a true and correct copy of a Twitter/X post by gaohweht_v2, (October 22, 2025).

d. On October 20, 2025, a Twitter user (Mike_Mammoth) wrote, "Thank the Good Lord for Utah Mammoth hockey!!!! #TusksUp." Attached hereto as **Exhibit H** is a true and correct copy of a Twitter/X post by Mike_Mammoth, (October 20, 2025).

C. **Actual Confusion Caused by Internet Searches**

e. On November 1, 2025, a Reddit commenter (MrScorpio) stated, "In the article it clearly shows that the Utah Mammoths are selling branded hockey bags. Which is the only thing the small business plaintiff sells. They are very much competing. All the hockey team had to do was not sell bags. If you search 'mammoth hockey bag'

you will find both, and it will lead to confusion." Attached hereto as **Exhibit I** is a true and correct copy of a Reddit post entitled "Utah Mammoth fire back at trademark lawsuit, saying the franchise might never 'recover' if forced to change name," displaying the comment by MrScorpio, dated 10 days ago (November 1, 2025) at 2.

f. In August 2025, a Reddit commenter (pklym) stated they had to use extra descriptors when trying to differentiate UTAH MAMMOTH and Mammoth Hockey. *See* Griffin Decl., Exhibit 25 at 5.

g. On October 31, 2025, a Reddit commenter (EMTDawg) stated, "[t]ry typing 'mammoth hockey' into Google. They went from the 1st search result (prior to Utah taking the name) to not on the 1st 10 pages of results when I tried it after the lawsuit was 1st announced." **Exhibit I** at 3, displaying the comment by EMTDawg, dated 11 days ago (October 31, 2025).

h. On November 1, 2025, a Reddit commenter (MistaPink) stated, "Lol Mammoth Hockey ain't wrong here. Just google searched Mammoth Hockey Bags and get blasted with Utah Mammoth Hockey bags." *Id.*, at 4, displaying the comment by MistaPink, dated 10 days ago (November 1, 2025).

i. In August 2025, an Instagram commenter (sand_is_greaney) stated, "I mean they have a solid case about their business being hurt. If you Google 'Mammoth Hockey' the NHL team will appear way before their company." Attached hereto as **Exhibit J** is a true and correct copy of an Instagram post entitled "The Utah Mammoth Have Filed A Lawsuit Against Mammoth Hockey, A Hockey Bag

10

Company," displaying the comment by sand_is_greaney, dated 14 weeks ago (August 2025) at p. 2.

**D. Actual Confusion Recognized by Consumers**

    j. On November 1, 2025, a Reddit commenter (SadBuilding9234) stated, "If my jock son asked me for a Mammoth hockey bag, and I googled it and bought a Utah Mammoth hockey bag because that came up higher in the search, I'd say that was unfair to the original company. Seems like a reasonable complaint to me." **Exhibit I** at 5, displaying the comment by SadBuilding9234, dated 10 days ago (November 1, 2025).

    k. On November 1, 2025, The Salt Lake Tribune commenter (Lincoln Terns) stated, "The Utah hockey team needs to eat this, they did not do their due diligence or research. Rushed, bad business and marketing that they should not be let off for. The owner should take it off the bottom line, not the salaries of those who did not make the mistake. At the end of the day, it was a leadership failure." Attached hereto as **Exhibit K** is a true and correct copy of the article entitled "Utah Mammoth fire back at trademark lawsuit, saying the franchise might never 'recover' if forced to change name," displaying the comment by Lincoln Terns, dated 2 weeks ago (November 1, 2025) at pp. 8-9.

    l. On November 1, 2025, a Reddit commenter (OkAnything4877) stated, "No fans of other team are going to want bags that seem to be affiliated with a rival team, fans of the Utah NHL team aren't going to want bags that look like a knockoff version of team merch, and their ability and hope to ever have NHL players use their bags

11

is now gone for the same reasons as above, as well as the 'bad blood' formed as a result of this legal case. In addition, search results for the brand, as well as word of mouth are now obscured and convoluted with the hockey club's existence and branding." **Exhibit I** at 6, displaying the comment by OkAnything4877, dated 10 days ago (November 1, 2025).

m. On November 1, 2025, a Reddit commenter (dr00bles1) stated, "I will say, having spent a career in a space where trademark scans are essential, that it is surprising that the Utah Mammoth didn't seem to think this was a possible risk. The other company is also a hockey-related IP and consumer confusion from internet searches is a plausible concern." *Id.*, at 7, displaying the comment by dr00bles1, dated 10 days ago (November 1, 2025).

n. On November 1, 2025, a Reddit commenter (tjbugs1) stated, "You're literally making the point for the bag company. What if they want to grow in to other markets, they are not going to be able to do that with great success." *Id.*, at 8, displaying the comment by tjbugs1, dated 10 days ago (November 1, 2025).

o. In August 2025, an Instagram user (dylan1218_) stated, "If Yeti could argue that being associated with the team could damage its brand (a brand around selling something not associated with hockey) than Mammoth fs has a better case than them. The whole 'fans of other teams not wanting to buy from mammoth' is a legitimate argument that will be heard in court. They gonna get paid big time." **Exhibit J** at 3.

12

    p. On November 1, 2025, a Reddit commenter (Creepy-Weakness4021) stated, "Why should a billion dollar organization be allowed to quash a small business? To allow such actions sets an incredibly dangerous precedent for all businesses and creates new risk for new businesses that cannot be quantified during business planning." **Exhibit I** at 9, displaying the comment by Creepy-Weakness4021, dated 11 days ago (November 1, 2025).

### E. Actual Confusion of a Benefit to Defendant

    q. On November 1, 2025, a Reddit commenter (DanfromCalgary) stated, "Most likely having a sports team with the same name as your bag would immediately increase your sales and the amount you could sell for." *Id.*, at 10, displaying the comment by DanfromCalgary, dated 10 days ago (November 1, 2025).

    r. On November 1, 2025, a Reddit commenter (paltryboot) stated, "This mammoth hockey company is missing the mark.. you could get some sweet advertising for free maybe get a couple players signed on deals and you might have a company people have heard of." *Id.*, at 11, displaying the comment by paltryboot, dated 10 days ago (November 1, 2025).

    s. On November 1, 2025, a Reddit commenter (Old_Canuck) stated, "You would think that would be to their advantage, no matter how the two are related . . . Im sure it would expand their clientele alot." *Id.*, at 12, displaying the comment by Old_Canuck, dated 11 days ago (November 1, 2025).

    t. On November 1, 2025, a Reddit commenter (wif68) stated, "This company that I've never heard of should be super happy for the publicity they should get, not

generating immense ill-will by suing a brand that has eclipsed theirs immeasurably." *Id.*, at 13, displaying the comment by wif68, dated 11 days ago (November 1, 2025).

37. A search conducted on November 9, 2025, for "Mammoth Hockey Bags" yielded the following images.



I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: November 13, 2025

                                              <u>/s/ Gerald W. Griffin</u>
                                              Gerald W. Griffin