Michele M. Myer (#13815)
**DORSEY & WHITNEY LLP**
111 S. Main Street, Suite 2100
Salt Lake City, UT 84111
Telephone: (212) 415-9200
Fax: (801) 933-7373
myer.michele@dorsey.com
*Attorneys for Plaintiffs*

Bruce R. Ewing (admitted *pro hac vice*)
**DORSEY & WHITNEY LLP**
51 West 52nd Street
New York, NY 10019
Telephone: (212) 415-9200
Fax: (801) 933-7373
ewing.bruce@dorsey.com

**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF UTAH**

| | |
|---|---|
| UYTE, LLC and SEG HOCKEY, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>MAMMOTH HOCKEY, LLC,<br><br>Defendant. | **PLAINTIFFS' MOTION TO COMPEL DEFENDANT TO PRODUCE DOCUMENTS IMPROPERLY WITHHELD ON THE BASIS OF PRIVILEGE**<br><br>Case No.: 2:25-cv-00639-DBB-CMR<br><br>Judge David Barlow<br>Magistrate Judge Cecilia Romero<br><br>**(REDACTED VERSION)** |

Pursuant to DUCivR 7-1(a)(4)(D), Plaintiffs Uyte, LLC and SEG Hockey, LLC (collectively, "Plaintiffs") move to compel Defendant Mammoth Hockey, LLC ("MH") to produce the documents identified in Exhibit A, which MH has improperly withheld or redacted based on claims of attorney-client and/or work product privileges. If the Court deems it appropriate, Plaintiffs respectfully request an *in camera* inspection of these documents so that the Court can assess the propriety of MH's privilege claims.

## FACTUAL BACKGROUND

Defendant MH is a supplier of "top shelf," "highly durable" hockey bags, Dkt. 30, ¶¶ 5, 42, sold under the designations "Mammoth Hockey" and a forward-facing mammoth logo. Plaintiffs operate a National Hockey League ("NHL") team using the trademark UTAH

MAMMOTH and a materially different logo of a mammoth head in profile (the "UTAH MAMMOTH Marks"). Dkt. 2, ¶¶ 13-22. MH asserts that buyers of its bags will be confused by the UTAH MAMMOTH Marks, in violation of its alleged trademark rights. Dkt. 28, ¶ 35. Plaintiffs filed a Complaint for Declaratory Judgment on August 1, 2025, requesting that the Court declare Plaintiffs have not infringed, diluted or otherwise violated MH's federal or common law trademark rights. Dkt. 2. The parties have been engaged in active litigation ever since, with discovery commencing in November 2025.

Currently at issue are certain categories of communications withheld by MH on the basis of the attorney-client and work product privileges. *See* Defendant's Amended Privilege Log, produced July 10, 2026, attached to the accompanying Declaration of Bruce R. Ewing ("Ewing Dec.") as Exhibit 1. The withheld communications consist of: (1) portions of 2024 Google chats [redacted] *see* pp. MAM015223, MAM015226 and MAM015228 within Exhibit 2 of the Ewing Dec.; (2) portions of 2025 Google chats [redacted], *see* MAM015258 and MAM015265, within Exhibit 3 of the Ewing Dec.[1]; (3) text messages [redacted], that were produced as MAM014344-45 and MAM014337, Ewing Dec., Exh. 4, [redacted] attached to the Ewing Dec. as Exhibit 5; and (4) December 2025 emails [redacted], that have been produced with redactions as MAM003601, MAM003632-34, MAM003686 and MAM015002-04, as shown in Ewing Dec., Exh. 6, [redacted]

[1] Ewing Dec., Exh. 3, includes redacted communications on pages MAM015268-69 that are not at issue on this motion to compel, as they post-date the engagement of current litigation counsel.

attached to the Ewing Dec. as Exhibit 7. These communications are not privileged, and the Court should order their immediate production or, alternatively, review them *in camera* and then order their production.

## LEGAL STANDARD

Federal Rule of Civil Procedure 26(b)(1) provides that "[p]arties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action." Fed. R. Civ. P. 26(b)(1). Accordingly, all relevant material is discoverable unless protected by an applicable privilege. *Id.*

The law governing privilege depends on the nature of the pleaded claims. Federal law applies to privilege questions involving federal claims, except where "state law supplies the rule of decision." *Pearson v. Miller*, 211 F.3d 57, 66 (3d Cir. 2000) (citing Fed. R. Evid. 501). When both federal and state law apply, courts resolve any conflict in favor of federal privilege law. *Id*. Federal Rule of Evidence 501 provides that claims of privilege are governed by the common law "as interpreted by United States courts in the light of reason and experience." Fed. R. Evid. 501. Rather than codifying privilege in a fixed statutory scheme, Rule 501 affords federal courts the flexibility to develop and recognize privileges on a case-by-case basis. *Jaffree v. Redmond*, 518 U.S. 1, 8 (1996).

The attorney-client privilege protects "'confidential communications by a client to an attorney made in order to obtain legal assistance' from the attorney in his capacity as a legal advisor." *In re Grand Jury Subpoena Duces Tecum Issued on June 9, 1982*, 697 F.2d 277, 278 (10th Cir. 1983) (*citing Fisher v. United States*, 425 U.S. 391, 403 (1976)); Utah R. Evid. 504 (b)(1) (withheld communications should be made "for the purpose or in the course of obtaining or facilitating the rendition of legal services" and involve a specified attorney-client relationship). Because the privilege operates to withhold otherwise relevant evidence, it must be strictly construed and applied "only to the very limited extent that permitting a refusal to testify or excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining truth." *Elkins v. United States*, 364 U.S.

206, 234 (1960). *See also Jackson v. Kennecott Copper Corp*., 27 Utah 2d 310, 495 P.2d 1254, 1257 (Utah 1972). Likewise, "[s]ince the privilege has the effect of withholding relevant information from the factfinder, it applies only where necessary to achieve its purpose." *Fisher*, 425 U.S. at 403.

The party asserting the privilege bears the burden of establishing that it applies. Specifically, the asserting party must prove that the communication was made in confidence, to an attorney, within the context of an attorney-client relationship, and for the purpose of obtaining or providing legal advice or legal services. *In re Grand Jury Subpoena*, 697 F.2d at 279; *State v. Vallejo*, 2019 UT 38, ¶ 38, 449 P.3d 39 (Utah 2019); *S. Utah Wilderness Alliance v. Automated Geographic Reference Ctr*., 2008 UT 88, ¶ 33, 200 P.3d 643 (Utah 2008). The attorney-client privilege will only serve to protect what is absolutely necessary and should be construed narrowly. *See Fisher*, 425 U.S. at 403.

Similarly, the work-product doctrine protects only documents prepared in anticipation of litigation or for trial by or for a party or its representative. Fed. R. Civ. P. 26(b)(3)(A); *Hickman v. Taylor*, 329 U.S. 495, 510 (1947); *McEwen v. Digitran Sys*., 155 F.R.D. 678, 682 (D. Utah 1994). Under both Utah and federal law, the doctrine applies only where the document's primary motivating purpose is to assist in pending or reasonably anticipated litigation. *Gold Standard Inc. v. Am. Barrick Res. Corp.*, 801 P.2d 909, 911 (Utah 1990) (quoting *Jackson*, 495 P.2d at 1257). Moreover, the doctrine is intended to protect the mental impressions, legal theories, and litigation strategy of attorneys and their legal representatives – not the independent mental impressions or opinions of clients. *Grace United Methodist Church v. City of Cheyenne*, 451 F.3d 643, 668 (10th Cir. 2006) ("[W]ork product protection only applies to attorneys or legal representatives' mental impressions, conclusions, opinions, or legal theories authored in anticipation of litigation.").

## ARGUMENT

### I. The 2024-25 Google Chats [redacted] Are Not Privileged Because They Are Not Work Product, [redacted].

In order for the attorney-client privilege to apply, there must be an attorney-client relationship, and communications must have occurred for the purpose of obtaining legal services. Communications between non-lawyers can be privileged only in limited circumstances, specifically, where the communications are both confidential and for the purpose of requesting or receiving legal advice. *High Point SARL v. Sprint Nextel Corp.*, No. 09-2269-CM, 2012 WL 234024, at *13-14 (D. Kan. Jan. 25, 2012); *In re Grand Jury Proceedings*, 616 F.3d 1172, 1183 (10th Cir. 2010) (privilege did not apply because the withheld materials "do not even involve attorney-client communications").

The Google Chats at issue occurred on April 25, 2024, June 4, 2024, January 29, 2025, and May 7, 2025. Ewing Dec., Exhs. 2 and 3. [redacted][2] *See id.*

The Google Chats cannot be withheld under the attorney-client privilege because they were exchanged between [redacted]. This is confirmed by the privilege log, which shows [redacted] The purpose of attorney-client privilege is "to encourage full and frank communications ***between attorneys and their clients***," not to give a party the unilateral ability to retroactively shield past conversations from their adversary. *See Upjohn Co. v. United States*, 449 U.S. 383,

---

[redacted]

389 (1981) (emphasis added). Withholding the Google Chats would not encourage full and frank communication between attorneys and their clients because: [redacted] *See id.* To allow MH to withhold these Chats as privileged would be inconsistent with both the policy underlying and the rules governing the attorney-client privilege. *See Fisher*, 425 U.S. at 403.

It appears that the Google Chats are [redacted] but these are not properly withheld as privileged because such communications would not include legal advice or requests for legal advice. *See Fisher*, 425 U.S. at 403; *In re Grand Jury Proceedings*, 616 F.3d at 1183. The elements required for a privileged communication ensure that the attorney-client privilege protects only those communications genuinely made for the purpose of obtaining legal advice, not business or other discussions that happen to occur between individuals who may later engage an attorney. Indeed, [redacted], they could not have been made "in order to obtain legal assistance." *In re Grand Jury Subpoena Duces Tecum*, 697 F.2d at 278 (quoting *Fisher*, 425 U.S. at 403). The purpose of the attorney-client privilege is "to encourage clients to make full disclosure to their attorneys," not to shield pre-retention business communications from discovery. *Gold Standard, Inc.*, 801 P.2d at 911. Extending the privilege to communications between principals made before any attorney was retained would improperly expand the privilege beyond its intended scope.

The withheld communications in Exhibits 2 and 3 are also not attorney work-product, for two reasons. First, [redacted] work-product immunity cannot be claimed, because only an ***attorney's*** mental impressions are shielded. *Grace United Methodist Church*, 451 F.3d at 668. Second, three of the withheld communications, Ewing Dec., Exh. 2 at MAM015223, 15226 and 15228, occurred over a year before this litigation was commenced. *See* Dkt. 2. Work product immunity cannot be invoked

so far ahead of an actual lawsuit, [redacted] *Metro Wastewater Reclamation Dist. v. Cont'l Casualty Co.*, 142 F.R.D. 471, 477 (D. Colo. 1992) (holding that documents created before litigation were not protected work product).

**II. The Text Messages Between [redacted] Are Not Privileged Because No Attorney-Client Relationship Existed, and the Communications Were Not for the Purpose of Obtaining Legal Services.**

For the attorney-client privilege to apply, an attorney-client relationship must be formed for the purpose of legal representation. Casual conversations with friends who are attorneys, but are not retained or serving as counsel, are not privileged. *See e.g., United States v. Evanson*, No. 2:05-cr-805-TC, 2007 U.S. Dist. LEXIS 89618, at *49-50 (D. Utah Dec. 5, 2007); *Motley v. Marathon Oil Co.*, 71 F.3d 1547, 1550-51 (10th Cir. 1995) ("[T]he mere fact that an attorney was involved in a communication does not automatically render the communication subject to the attorney-client privilege."). The existence of an attorney-client relationship is a threshold requirement for asserting privilege. *S. Utah Wilderness Alliance,* 200 P.3d 643 at ¶ 34 (a party must establish an attorney-client relationship to assert privilege). This relationship "is created by contract . . . [and] may be express or implied from the conduct of the parties." *Breuer-Harrison, Inc. v. Combe*, 799 P.2d 716, 727 (Utah Ct. App. 1990). Pertinent factors include "whether advice or assistance of the attorney is both sought and received," and whether the client reasonably believed the attorney was acting on their behalf. *Id.* (*citing Huddleston v. State,* 259 Ga. 45, 376 S.E.2d 683, 684 (1989)). However, "a party's belief that an attorney-client relationship exists… is not sufficient to create a confidential attorney-client relationship." *Breuer-Harrison, Inc.*, 799 P.2d at 727. *See also Cole v. Ruidoso Mun Sch.*, 43 F.3d 1373, 1384 (10th Cir. 1994) ("In addition to having a subjective belief that there was an attorney-client relationship, the belief must have been reasonable."); *Bistline v. Parker*, 918 F.3d 849, 867 (10th Cir. 2019) (applying Utah law) ("The specific circumstances of the case, in totality, must also demonstrate that the client's belief in individual representation is reasonable.").

The attorney-client privilege cannot possibly shield the conversations between [redacted] that are the subject of Ewing Dec. Exh. 4 and described in Ewing Dec. Exh. 5. [redacted] Ewing Dec., Exh. 5 at 213:15-21. [redacted] Both the Tenth Circuit and Utah have already confronted this issue and recognized a sharp distinction between friendship and legal representation, explaining that "[a]dvice from a friend, riddled with legal jargon because that friend is an attorney, does not automatically render those communications confidential." *Trial Lawyers College v. Gerry Spence's Trial Lawyers College at Thunderhead Ranch*, No. 120-CV-00080-JMC-MLC, 2021 U.S. Dist. LEXIS 255319, at *10 (D. Wyo., June 11, 2021); *Vallejo*, 449 P. 3d at ¶ 38 (communications with attorney who was a friend not privileged because purpose of conversation was not to seek legal advice).

Furthermore, the mere fact that one party to a communication is a licensed attorney does not automatically create an attorney-client relationship or render the communication privileged. *See* Utah R. Evid. Rule 504; *Motley*, 71 F.3d at 1550-51. The privilege extends only to communications made "for the purpose or in the course of obtaining or facilitating the rendition of legal services to the client." Utah R. Evid. Rule 504; *S. Utah Wilderness Alliance*, 200 P.3d at 655. Therefore, [redacted] does not automatically make the communications privileged.

Finally, as explained above, a party's subjective belief they are receiving legal advice is key. *Bistline*, 918 F.3d at 867. [redacted] *Vallejo*, 449 P. 3d at ¶ 38. Therefore, the communications are not privileged.

**III. [redacted] Is Not Privileged Because No Attorney Was Involved.**

As explained, *supra*, the attorney-client privilege exists "to encourage full and frank communications between attorneys and their clients," not to give a party the unilateral ability to retroactively shield conversations from their adversary. *See Upjohn Co.*, 449 U.S. at 389. Communications where no attorney is present do not receive protection because allowing them to be withheld would not encourage honesty and candor between a client and attorney. *See id; Utah Wilderness Alliance*, 200 P.3d at ¶ 33. MH seeks to withhold emails between [redacted] Ewing Dec., Exhs. 6, 7. The communications at issue are entirely factual and could not include legal advice or requests for legal advice as no party is a lawyer. "The protection of the privilege extends only to communications and not to facts. A fact is one thing and a communication concerning that fact is an entirely different thing." *Munson v. Chamberlain*, 173 P.3d 848, at 851 (Utah Sup. Ct. 2007) (*citing Upjohn Co.*, 449 U.S. at 395-96 (internal quotation marks and brackets omitted)).

As Plaintiffs understand it, MH's position is that because [redacted] this information is somehow shielded from production as privileged. However, [redacted] there was still no ***advice*** in the communications – just factual information that is outside the scope of the attorney-client privilege. *Upjohn Co.*, 449 U.S. at 389; *Jackson*, 495 P.2d at 1255, 1257.

## CONCLUSION

MH cannot meet its burden of establishing that any privilege shields the three categories of withheld communications, and therefore the Court should order their immediate production. Should the Court believe an *in camera* inspection of these communications is appropriate in

order to inform its decision, Plaintiffs have no objection, in advance of a decision on the propriety of MH's privilege claims.

Dated: July 15, 2026

Michele M. Myer
myer.michele@dorsey.com
DORSEY & WHITNEY LLP
111 South Main Street, Suite 2100
Salt Lake City, UT 84111-2176
(801) 933-7360

*/s/ Bruce R. Ewing*
Bruce R. Ewing (*pro hac vice*)
ewing.bruce@dorsey.com
DORSEY & WHITNEY LLP
51 West 52nd Street
New York, NY 10019
(212) 415-9200

*Attorneys for Plaintiffs*

**EXHIBIT A – DOCUMENTS THAT ARE THE SUBJECT OF MOTION TO COMPEL**

MAM015223

MAM015226

MAM015228

MAM015258

MAM015265

MAM014344-45

MAM014337

MAM003601

MAM003632-34

MAM003686

MAM015002-04

**CERTIFICATE OF SERVICE**

I hereby certify that on the 15th day of July 2026, a true and correct copy of the foregoing **PLAINTIFFS' MOTION TO COMPEL DEFENDANT TO PRODUCE DOCUMENTS IMPROPERLY WITHHELD ON THE BASIS OF PRIVILEGE** was served electronically upon all counsel of record via the Court's CM/ECF filing system.

*/s/ Jacqueline Ervin*

**<u>DUCivR 37-1(b)(2)(A) CERTICATION</u>**

Pursuant to DUCivR 37-1(b)(2)(A), counsel for Plaintiffs certify that Plaintiffs informed Defendant of the deficiencies detailed above in a letter dated June 26, 2026, and that the parties met and conferred through written correspondence, and then through a telephone conference on July 13, 2026, and that the parties have reached an impasse with respect to these disputes. Michele Myer representing Plaintiffs, and Gerald Griffin and Janice Kwon representing Defendant, participated in the telephone conference, and all counsel of record were included in the correspondence on the subject.

*<u>/s/ Bruce R. Ewing</u>*