R. Jeremy Adamson (12818)
Catherine M. Maness (16885)
BUCHALTER
A Professional Corporation
60 E. South Temple, Suite 1200
Salt Lake City, Utah 84111
(801) 401-8625
jadamson@buchalter.com
cmaness@buchalter.com

*Attorneys for Mammoth Hockey, LLC*

Gerald W. Griffin (*admitted pro hac vice*)
Leonardo Trivigno (*admitted pro hac vice*)
Meredith Spelman (*admitted pro hac vice*)
Janice J. Kwon (*admitted pro hac vice*)
Allison Guerra (*admitted pro hac vice*)
CARTER LEDYARD & MILBURN LLP
28 Liberty Street, 41st Floor
New York, New York 10005
(212) 238-8610
griffin@clm.com
trivigno@clm.com
spelman@clm.com
kwon@clm.com
guerra@clm.com

**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF UTAH**

| | |
|---|---|
| UYTE, LLC and SEG HOCKEY, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>MAMMOTH HOCKEY, LLC,<br><br>Defendant. | **DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL THE PRODUCTION OF DOCUMENTS**<br><br>Case No.: 2:25-cv-00639-DB-CMR<br><br>Judge David Barlow<br><br>Chief Magistrate Judge Cecilia M. Romero |

Defendant Mammoth Hockey, LLC ("Mammoth Hockey") submits this opposition to Plaintiffs' motion to compel the production of privileged documents. ECF 66 ("Mot."). The motion should be denied because Plaintiffs seek the disclosure of communications that Mammoth Hockey properly redacted under the attorney-client privilege, work product doctrine, or both.

## PRELIMINARY STATEMENT

Plaintiffs' motion proceeds from four erroneous premises: that the work product doctrine only applies to attorneys, work-product protection requires temporal proximity to litigation, there is no attorney-client privilege in the absence of an attorney, and communications about facts

gathered at the request of counsel are not protected by the attorney-client privilege. These contentions—the foundation for Plaintiffs' motion—are not recognized by law and Plaintiffs' own cited authorities refute them.

From there, Plaintiffs seek three categories of protected communications: (1) 2024 and 2025 Google Chats between Mammoth Hockey's principals, Erik Olson ("Olson") and Lars Huschke[1] ("Huschke"), containing communications prepared in anticipation of litigation and reflecting legal strategy ("Category 1"); (2) May and June 2024 texts in which Olson sought or received advice from attorneys ("Category 2"); and (3) December 2025 emails between Olson and Huschke, reflecting content prepared at counsel's request during this litigation ("Category 3"). When viewed in their proper context, and under the correct legal principles, these communications are protected from disclosure.

## BACKGROUND

Plaintiffs' motion strips the challenged communications from the factual record, which reveals that Mammoth Hockey anticipated litigation in April 2024 and coordinated legal strategy thereafter, including consultations with counsel.

***Category 1 – Exs. 2-3 (MAM015223, 15226, 15228, 15258, 15265)***.[2] The first category of challenged communications contains Google Chat messages exchanged between Olson and Huschke in 2024 and 2025, made in anticipation of litigation and reflecting legal strategy while Plaintiffs registered and selected "Utah Mammoth" as a trademark for their new NHL franchise—a name that infringes on Mammoth Hockey's preexisting mark.

[1] Declaration of Erik Olson, ECF 30-2.
[2] "Ex." refers to exhibits appended to the Declaration of Bruce Ewing, ECF 68-1.

On April 23, 2024, Plaintiffs filed an application with the United States Patent and Trademark Office ("USPTO") to register "Utah Mammoth" as a trademark. Counterclaims Ex. B, ECF 28-2. Two days later, Olson and Huschke exchanged messages discussing "legal strategy and mental impression[s] in anticipation of litigation." Exs. 1, 2 at MAM015223. On May 8, 2024, Plaintiffs advanced their use of the "Utah Mammoth" trade name, submitting it for a public vote, among other potential team names. Armstrong Decl. ¶ 11.[3] Following communications with attorneys concerning their intellectual property rights (see Category 2), Olson and Huschke continued to discuss "legal strategy and mental impression[s] in anticipation of litigation" via Google Chat. Exs. 1, 2 at MAM015226, MAM015228. As shown in messages surrounding the redacted content, Mammoth Hockey actively strategized and sought counsel—*e.g.*, "[k]now any intellectual property attorneys in Spokane?" and "got a reply back from the IP attorney," underscoring that the communications were not routine business discussions. *Id.*

Mammoth Hockey's anticipation of litigation persisted in 2025, as Plaintiffs selected "Utah Mammoth," and associated marks, for their team. On January 29, news reports showed that "Utah Mammoth" remained one of three options for Plaintiffs' team name. Armstrong Decl. Ex. 5. That same day, after questioning whether they should "have an attorney reach out" to Plaintiffs, Olson and Huschke again discussed "legal strategy and mental impression[s]" in anticipation of litigation. Exs. 1, 3 at MAM015258. On February 13, as "Utah Mammoth" emerged as a fan favorite, Plaintiffs sought Mammoth Hockey's contact information from a former NHL player, Michael Lundin ("Lundin"). Armstrong Decl. ¶¶ 37-38. On May 7, although they never contacted Mammoth Hockey, Plaintiffs publicly announced their selection of Utah Mammoth as a team name

[3] Declaration of Christopher Armstrong, ECF 38 ("Armstrong Decl.").

and unveiled a mammoth-head logo strikingly similar to Mammoth Hockey's. *Id.* ¶ 23. Two days later, Olson and Huschke again consulted regarding "legal strategy and mental impression[s]" in anticipation of litigation. Exs. 1, 3 at MAM015265. The parties exchanged letters through counsel throughout June and July, and this litigation commenced just a few months later.

***<u>Category 2 – Ex. 4 (MAM014344, 14337)</u>***. The second category of challenged communications includes Olson's text messages with attorneys concerning Mammoth Hockey's legal rights. On May 8, 2024, the same day Plaintiffs submitted "Utah Mammoth" for a public vote, Olson texted two attorneys "seeking legal advice in anticipation of litigation." Exs. 1, 4 at MAM014344. On June 6, 2024, as publicity mounted concerning the public vote, Olson again texted with one of those attorneys. Exs. 1, 4 at MAM014337.

***<u>Category 3 – Ex. 6 (MAM003601, 3632, 3686, 15002)</u>***. The third category of challenged communications consists of emails between Mammoth Hockey principals during this litigation, on December 15, 2025. Exs. 1, 6. The emails, "prepared at counsel's direction," contain unredacted screenshots of Olson's communications with Lundin and were prepared two days before Mammoth Hockey served its responses to Plaintiffs' interrogatories—which required Mammoth Hockey to "[d]escribe in detail all communications between Defendant and Mike Lundin concerning Plaintiffs or the UTAH MAMMOTH Marks." Griffin Decl. ¶¶ 3-4.[4] That same day, Olson emailed Mammoth Hockey's current counsel regarding this litigation. Ex. 1 at MHPRIV00009. At his deposition, Huschke confirmed that the documents in Category 3 were prepared "in connection with this case." Ex. 7 at 102:11-14.

[4] Declaration of Gerald Griffin, dated July 31, 2026 ("Griffin Decl.").

## ARGUMENT

### I. Categories 1 and 3 Are Protected Work Product

The work product doctrine is governed by Rule 26(b)(3) of the Federal Rules of Civil Procedure, which shields from discovery "documents and tangible things that are prepared in anticipation of litigation or for trial by or for [a] party or its representative." The doctrine is an "intensely practical one" and protects a party's subjective analysis during or in anticipation of litigation. *United States v. Nobles*, 422 U.S. 225, 238-39 (1975).

Rule 26(b)(3) plainly extends to a "party or its representative." Accordingly, the doctrine is not limited to attorneys, nor does it require the participation—or even the retention—of counsel. Numerous courts in this Circuit have recognized as much. *See, e.g.*, *Republic of Ecuador v. For Issuance of a Subpoena Under 28 U.S.C. Sec. 1782(a)*, 735 F.3d 1179, 1185 (10th Cir. 2013) ("Rule 26(b)(3)'s work-product doctrine extends past attorneys 'to a party or any representative acting on his behalf.'"); *cf. Ortega v. N.M. Legal Aid, Inc.*, 2019 WL 5864784, at *3-4 (D.N.M. Nov. 8, 2019) ("Because the work-product doctrine applies to documents prepared by a party, it applies equally to pro se parties." (citation omitted)). Here, the challenged communications in Categories 1 and 3 are the work product of Mammoth Hockey's representatives, Olson and Huschke, including documents prepared in anticipation of litigation and at the direction of counsel. Plaintiffs' motion identifies no basis to find otherwise.

#### A. Category 1: The Challenged 2024-2025 Google Chats Are Work Product

Plaintiffs seek disclosure of redacted work product in Google Chats exchanged by Olson and Huschke between 2024 and 2025, when Mammoth Hockey's principals discussed "legal strategy and mental impression[s] in anticipation of litigation." Exs. 1-3 at MAM015223,

MAM015226, MAM015228, MAM015258, MAM015265. As noted above, the challenged communications were prompted by Plaintiffs' USPTO application to register "Utah Mammoth" as a trademark and the release of additional information concerning the infringing marks. During this time, Mammoth Hockey actively strategized and sought legal advice—as reflected in several unredacted references to "intellectual property attorneys," "IP attorney," and "our Mammoth attorney" throughout the challenged communications. *See id.* Plaintiffs' motion is silent on these facts and argues that the absence of an attorney on the conversations is dispositive. That is incorrect. *See Republic of Ecuador*, 735 F.3d at 1185.

### B. Category 3: The Challenged Emails Collecting Information at the Direction of Counsel Are Work Product

As stated in Mammoth Hockey's privilege log, the challenged December 15, 2025 emails reflect "information gathered or prepared *at the direction of counsel in connection with the current litigation*." Ex. 1 at MAM003601, MAM003632, MAM003686, MAM015002 (emphasis added). A review of the factual context surrounding the emails (including the subject line, "Lundin," and unredacted communications with Lundin) reveals that Mammoth Hockey's responses to Plaintiffs' interrogatories were due two days later, on December 17, which required Mammoth Hockey to describe, among other things, "all communications between Defendant and Mike Lundin." Griffin Decl. ¶¶ 3-4. Any ambiguity as to the purpose of the challenged communications was resolved at deposition, after Huschke confirmed that the emails were prepared "in connection with this case." Ex. 7 at 102:11-14. No further inquiry is necessary.

### C. Plaintiffs Misconstrue the Work Product Doctrine

Arguing that the work product doctrine does not apply, Plaintiffs incorrectly assert that "only an attorney's mental impressions are shielded." Mot. 6. The relevant authorities are not

ambiguous. A party's principals are entitled to protection, even in the absence of an attorney. *See* Rule 26(b)(3) (extending protection to a "party or its representative"); *Republic of Ecuador*, 735 F.3d at 1185 ("Rule 26(b)(3)'s work-product doctrine extends past attorneys.'").

Plaintiffs rely exclusively on *Grace United Methodist Church v. City of Cheyenne* for their contention that work product protection extends only to "attorneys and their legal representatives – not the independent mental impressions or opinions of clients." Mot. 4. But *Grace United* says nothing of the sort. The Circuit's statement, cited by Plaintiffs, that "work product protection only applies to attorneys' or legal representatives' mental impressions, conclusions, opinions, or legal theories," is not a reference to attorneys *and their* legal representatives. 451 F.3d 643, 668 (10th Cir. 2006). Rather, "legal representatives" means what Rule 26 says, *i.e.*, that the protection extends to a "party or its representative," such as a "consultant, surety, indemnitor, insurer, or agent." Fed. R. Civ. P. 26(b)(3)(A). Indeed, the Tenth Circuit tacitly acknowledged as much in *Grace United*: "any work product objection [based on a letter written by the church's representative, a bishop] was waived . . . via production." *Id.*

Plaintiffs also invent a temporal requirement. They argue that some of the challenged communications "occurred over a year before this litigation," and "[w]ork product immunity cannot be invoked so far ahead of a lawsuit." Mot. 6-7. That is not so. The passage of time between a document's creation and the commencement of litigation does not defeat work-product protection and courts in this Circuit recognize that "[l]itigation need not necessarily be imminent as long as the primary motivating purpose behind the creation of the document was to aid in possible future litigation." *Sanchez v. Matta*, 229 F.R.D. 649, 655 (D.N.M. 2004). As such, the Tenth Circuit has also observed that "Rule 26's language does not indicate that the work product

protection is confined to materials specifically prepared for the litigation in which it is sought." *Frontier Refining Inc. v. Gorman-Rupp Co.*, 136 F.3d 695, 703 (10th Cir. 1998). In fact, the doctrine even extends to subsequent litigations, which may be years apart. *Id.*

Plaintiffs' lone citation for a temporal limitation—*Metro Wastewater Reclamation Dist. v. Cont'l Cas. Co.*, 142 F.R.D. 471, 477 (D. Colo. 1992)—is not to the contrary. In *Metro Wastewater*, the proponent could not show "an identifiable prospect of litigation" for materials created twenty years earlier, in the 1970s, long before the statute at issue (CERCLA) was enacted. *Id.* The challenged communications here stand in marked contrast. They arose after a concrete threat of trademark infringement emerged—a USPTO application in April 2024 registering an infringing mark—after which Mammoth Hockey's principals sought legal advice and coordinated to protect their rights.

## II. Categories 2 and 3 Are Protected by the Attorney-Client Privilege

Attorney-client privilege "exists to protect not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice." *Upjohn Co. v. United States*, 449 U.S. 383, 390 (1981). It extends not only to direct communications with counsel, but also "confidential communications made for the purpose of facilitating the rendition of professional legal services to the client or to those reasonably necessary for the transmission of the communication." *Mafille v. Kaiser-Francis Oil Co.*, 2019 WL 3219151, at *2 (N.D. Okla. July 17, 2019). Thus, "internal communications that reflect matters about which the client intends to seek legal advice are protected." *Box Elder Kids, LLC v. Anadarko E & P Onshore, LLC*, 2023 WL 5042922, at *5 (D. Colo. Aug. 8, 2023). The analysis therefore turns on substance, not form, and neither a formal engagement nor an attorney's

inclusion on every communication is required. Indeed, courts "have recognized that the mere presence or absence of attorney or non-attorney recipients is not determinative." *Braun v. Medtronic Sofamor Danek, Inc.,* 2013 WL 4537776, at *2 (D. Utah Aug. 27, 2013) (citation omitted).

Although Plaintiffs' motion does not address whether federal or state law applies to the privilege claims, federal privilege law governs. "In federal-question cases, where a federal court has supplemental jurisdiction over a state law claim, federal privilege law controls when the allegedly privileged evidence is relevant to both the federal and state law claims." *Est. of Crookston v. United States*, 2023 WL 8789509, at *2 (D. Utah Dec. 19, 2023). Plaintiffs do not argue to the contrary.

**A. Category 2: The Challenged Texts Between Olson and Counsel Are Privileged**

Olson's text messages with attorneys are privileged attorney-client communications. Ex. 1 at MAM014337, MAM014344. Plaintiffs themselves acknowledge that the participants in those communications were attorneys, and Olson testified at deposition that he contacted them precisely for that reason. Ex. 5 at 210:20-25. Mammoth Hockey's privilege log identifies the texts as communications "providing and seeking legal advice in anticipation of litigation." Ex. 1 at MAM014337, MAM014344. That is consistent with the facts. The first text occurred on May 8, 2024, the same day Plaintiffs submitted "Utah Mammoth" for a public vote. The second text occurred on June 6, 2024, just two days before the results of the vote, and roughly one month after Plaintiffs filed an application to register "Utah Mammoth" as a trademark. Counterclaims Ex. B, ECF 28-2.

That the attorneys in the challenged texts were Olson's friends does not change the analysis. Privilege turns on the capacity in which an attorney is consulted and the communication's purpose, not the parties' preexisting social relationship. *See, e.g.*, *Trial Lawyers Coll. v. Gerry Spence's Trial Lawyers Coll. at Thunderhead Ranch*, 2021 WL 7287674, at *2 (D. Wyo. June 10, 2021) ("When Parris approached Kushner for legal advice, even though she was a friend, an attorney-client relationship was created."). Olson's testimony at deposition leaves little doubt that he contacted both individuals in their capacities as attorneys: "A: They are both attorneys, yes. Q: Is that why you reached out to them? A: Yes." Ex. 5 at 210:20-25. Nor is privilege defeated because Olson did not formally retain them. Confidential communications with counsel, made for the purpose of obtaining legal advice, are privileged no matter the status of the attorney's engagement. *Coe v. Cross-Lines Ret. Ctr., Inc.*, 2022 WL 17338289, at *6 (D. Kan. Nov. 30, 2022) ("attorney-client privilege may attach to confidential communications made before a formal attorney-client agreement is entered"). For that reason, Olson's lay testimony that he did not consider himself a "client" does not retroactively change the purpose of his communications. The attorney-client relationship "does not require a contract, payment, or official labels." *Trial Lawyers*, 2021 WL 7287674, at *6. Here, that relationship formed when Olson confidentially sought (and received) legal advice from counsel.[5]

[5] Plaintiffs' authorities either support Mammoth Hockey or address materially different circumstances. *See Trial Lawyers*, 2021 WL 7287674, at *2-3 (attorney-client relationship arose when party approached attorney-friend for legal advice, finding most communications privileged); *Motley v. Marathon Oil Co.*, 71 F.3d 1547, 1550-51 (10th Cir. 1995) (affirming privilege where documents were prepared to provide legal advice); *Breuer-Harrison, Inc. v. Combe*, 799 P.2d 716, 727 (Utah Ct. App. 1990) (attorney-client relationship may be implied); *Bistline v. Parker*, 918 F.3d 849, 865-66 (10th Cir. 2019) (same); *State v. Vallejo*, 2019 UT 38, ¶¶ 83-89 (Utah 2019) (no privilege where attorney-friend "offered no legal advice" and "was never asked for any"); *S. Utah Wilderness All. v. Automated Geographic Reference Ctr.*, 2008 UT 88, ¶¶ 34-36 (Utah 2008) (no

### B. Category 3: The Challenged Emails Collecting Information at the Direction of Counsel Are Privileged

The challenged emails are privileged because they reflect internal communications at counsel's direction during this litigation. Ex. 1 at MAM003601, MAM003632, MAM003686, MAM015002. While that should be enough to foreclose disclosure, Plaintiffs nevertheless argue that "[c]ommunications where no attorney is present do not receive protection." Mot. 9. That is not true. The privilege protects internal communications among a company's representatives when they gather or convey information needed to obtain or act on legal advice. *See, e.g.*, *Nalco Co., Inc. v. Baker Hughes Inc.*, 2017 WL 3033997, at *3 (S.D. Tex. July 18, 2017) (communications between non-attorney corporate employees are privileged when made "for the purpose of securing legal advice"). Otherwise, the privilege would offer no protection for corporate entities, who can only act through their representatives, most of whom are not attorneys.

The challenged emails were clearly prepared to facilitate counsel's services in this litigation. Huschke confirmed as much when he testified that he understood the information would be used in this litigation. Ex. 7 at 102:3-14. Indeed, the privilege log also shows a withheld email sent to counsel the same day. Ex. 1 at MHPRIV00009. These emails were exchanged on December 15, 2025—just two days before Mammoth Hockey's interrogatory responses were served. Griffin Decl. ¶¶ 3-4.

Plaintiffs' emphasis on the factual content of the emails (Mot. 9) confuses discoverable *facts* with *communications about facts*. A privileged communication about facts—for example, an

---

privilege for records provided to nonlegal agency by municipalities); *Cole v. Ruidoso Mun. Schs.*, 43 F.3d 1373, 1384-85 (10th Cir. 1994) (no individual attorney-client relationship where employee consulted company counsel); *United States v. Evanson*, 2007 WL 4299191, at *17-18 (D. Utah Dec. 5, 2007) (rejecting privilege where proponent failed to provide sufficient facts).

email prepared by company principals to aid counsel in drafting interrogatory responses—does not become discoverable because it contains facts. Here, Plaintiffs misread *Upjohn*, 449 U.S. 383. In *Upjohn*, the government was free to question employees about what they knew (underlying facts) but could not compel disclosure of communications about those facts (privileged attorney-client communications). *Id.* The same is true here. Plaintiffs were free to discover Olson's contacts with Lundin, but not the contents of Olson's confidential communications about those contacts, prepared to facilitate counsel's services in this litigation.

## CONCLUSION

For the foregoing reasons, Mammoth Hockey respectfully requests that the Court deny Plaintiffs' motion, which can be denied without an *in camera* review.

Date: July 31, 2026

*/s/ Gerald W. Griffin*

Gerald W. Griffin (*admitted pro hac vice*)
Leonardo Trivigno (*admitted pro hac vice*)
Meredith Spelman (*admitted pro hac vice*)
Janice J. Kwon (*admitted pro hac vice*)
Allison Guerra (*admitted pro hac vice*)
CARTER LEDYARD & MILBURN LLP
28 Liberty Street, 41st Floor
New York, New York 10005
(212) 238-8610
griffin@clm.com
trivigno@clm.com
spelman@clm.com
kwon@clm.com
guerra@clm.com

R. Jeremy Adamson (12818)
Catherine M. Maness (16885)
BUCHALTER
A Professional Corporation
60 E. South Temple, Suite 1200
Salt Lake City, Utah 84111

(801) 401-8625
jadamson@buchalter.com
cmaness@buchalter.com

*Attorneys for Mammoth Hockey, LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 31st day of July, 2026, a true and correct copy of the foregoing **DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL THE PRODUCTION OF DOCUMENTS** was served upon all counsel of record electronically, through the Court's CM/ECF filing system.

*/s/ Gerald W. Griffin*

Gerald W. Griffin

**CERTIFICATE OF COMPLIANCE**

I, Gerald W. Griffin, hereby certify that **DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL THE PRODUCTION OF DOCUMENTS** contains 3,099 words and complies with DUCivR 7-1(a)(4).

*/s/ Gerald W. Griffin*

Gerald W. Griffin