Michele M. Myer (#13815)
**DORSEY & WHITNEY LLP**
111 S. Main Street, Suite 2100
Salt Lake City, UT 84111
Telephone: (801) 933-7360
Facsimile: (801) 933-7373
myer.michele@dorsey.com
*Attorneys for Plaintiffs*

Bruce R. Ewing (admitted *pro hac vice*)
**DORSEY & WHITNEY LLP**
1301 Avenue of the Americas, Floor 13
New York, NY 10019
Telephone: (212) 415-9200
Facsimile: (801) 933-7373
ewing.bruce@dorsey.com

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF UTAH**

UYTE, LLC and SEG HOCKEY, LLC,

Plaintiff,

vs.

MAMMOTH HOCKEY, LLC,

Defendant.

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO COMPEL DEFENDANT TO PRODUCE DOCUMENTS IMPROPERLY WITHHELD ON THE BASIS OF PRIVILEGE**

Civil No. 2:25-cv-00639-DBB-CMR

Judge David Barlow
Magistrate Judge Cecilia Romero

**REDACTED VERSION**

Plaintiffs submit this reply in support of their motion to compel Defendant to produce documents improperly withheld on the basis of privilege, and restate their alternative request that the Court conduct an *in camera* inspection of the disputed documents to assess the propriety of Defendant's privilege claims.

## ARGUMENT

### I. The 2024-25 Google Chats [redacted] (Category 1), and the December 15, 2025 Email [redacted] (Category 3), Are Not Work Product.

Defendant argues that 2024-25 Google Chats [redacted] – and a December 15, 2025 email [redacted] were properly withheld because they are work product. Dkt. 77 at 5-8. In support, Defendant relies almost entirely on Fed. R. Civ. P. 26(b)(3) and claims the work-product doctrine can and should be applied to a party or its representative without the "participation – or even retention – of counsel." Dkt. 77 at 5. This contention is at odds with precedent, including the cases on which Defendant relies.

At its core, "the work-product doctrine shelters the mental processes ***of the attorney***, providing a privileged area within which he can analyze and prepare his client's case." *U.S. v. Nobles*, 422 U.S. 225, 238 (1975) (emphasis added). The work-product doctrine creates a zone of privacy to protect an attorney's litigation strategies from disclosure to the party against whom he intends to use those strategies. *See id.*; *In re Grand Jury Proceedings*, 616 F.3d 1172, 1184 (10th Cir. 2010).

Recognizing that litigation strategies are often created in tandem with other professionals, courts have extended the work-product doctrine to those standing in the "legal shoes" of a party or its retained attorneys, which can include experts, consultants, indemnitors, insurers, or agents. Fed. R. Civ. P. 26(b)(4); *Carrion v. For the Issuance of a Subpoena Under 28 U.S.C. § 1782(a) (In re Republic of Ecuador)*, 735 F.3d 1179, 1184 (10th Cir. 2013). But this extension is not absolute, and work-product immunity is not necessarily applicable when disclosure to such representatives is at issue.

None of the cases cited by Defendant extend work-product protection to materials like those here; in fact, its cited cases support a much narrower interpretation of the doctrine. Defendants cite *In re Republic of Ecuador* for the proposition that the "work-product doctrine extends past attorneys 'to a party or any representative acting on his behalf'" – a quote from a

headnote, not the opinion itself. But that case did not involve materials created by a party without the involvement of any attorney, and the Tenth Circuit held that work-product protection was inapplicable to documents shared with an expert witness. 735 F.3d at 1186.

Similarly, in *Ortega v. N.M. Legal Aid*, No. 18-111 MV/KK, 2019 U.S. Dist. LEXIS 194936 at *7-10 (D.N.M. Nov. 8, 2019), the court largely denied the *pro se* plaintiff's request to withhold documents based on the work-product doctrine. Rather, the court compelled her to produce journals and other materials she had been withholding, and held that the work-product doctrine applies narrowly to "drafts of pleadings and notes regarding same, drafts of letters to opposing counsel and notes regarding same, legal research and notes regarding same, and notes [plaintiff] prepared for, at, or regarding any hearing before this Court" contained within those items. *Id.* Notably, the work-product doctrine did not apply to these materials because the plaintiff created them, but because she was acting *pro se* and therefore standing in the "legal shoes" that would otherwise be filled by an attorney.

In contrast, the withheld Chats are not examples of Defendant filling any "legal shoes" in this action. And even when [redacted] – the work-product doctrine does not protect the resulting documents or recorded impressions. This was the ruling of the Second Circuit in *In re Grand Jury Subpoena,* 599 F.2d 504, 511 (2d Cir. 1979), in which it required that a company produce memoranda from an internal investigation, even though the investigating employees were acting under the instructions of the corporation's general counsel, and the resulting work-product spurred the retention of counsel, who later conducted additional investigations. *Id.* Similarly, work-product did not protect records of a represented party's communications with an

AI chatbot because they were not prepared at the request of counsel "nor did they reflect defense counsel's strategy." *United States v. Heppner*, 820 F. Supp. 3d 292, 298 (S.D.N.Y. 2026). The court reached this conclusion despite the defendant's assertion that the AI-prepared reports "outlined defense strategy" and were prepared after retaining counsel. *Id.* at 295.

Based on these authorities, the Chats [redacted] At best, the Chats [redacted] *In re Grand Jury Subpoena*, and any results of that investigation do not qualify as work product [redacted]

Work-product protection is also unavailable because Defendant insufficiently demonstrated that the privilege applies. Courts generally "need[] more than mere assertions by the party resisting discovery that documents or other tangible items were created in anticipation of litigation." *Williams v. Sprint/United Mgmt. Co.*, 245 F.R.D. 660, 668-69 (D. Kan. 2007). There "must be a *substantial* probability that litigation will ensue *at the time the documents were drafted*" for the work-product doctrine to apply. *Id.* at 668 (emphasis added). "The inchoate possibility, or even likely chance of litigation, does not give rise to work product." *United States Fire Ins. Co. v. Bunge N. Am., Inc.*, 247 F.R.D. 656, 658 (D. Kan. 2007 (citation omitted). Here, [redacted]

[redacted] Defendant's invocation of work-product privilege fails.

The privilege also does not shield the December 15, 2025 email [redacted] because work-product's purpose is to "guard against divulging the attorney's strategies and legal impressions." *Resolution Trust Corp. v. Dabney*, 73 F.3d 262, 266 (10th Cir. 1995). It "does not protect facts concerning the creation of work product or facts contained within work product." *Id.*; *cf. In re Grand Jury Proceedings*, 616 F.3d 1172; *EEOC v. Outback Steakhouse of Fla., Inc.*, 251 F.R.D. 603, 610 (D. Colo. 2008). Nor does the work-product doctrine "preclude inquiry into the mere fact of an investigation." *Resolution Trust Corp.*, 73 F. 3d at 266. Indeed, "courts have consistently held that the work-product concept furnishes no shield against discovery, by interrogatories or by deposition, of the facts that the adverse party's lawyer has learned, or the persons from whom he has learned such facts, or the existence or nonexistence of documents, even though the documents themselves may not be subject to discovery." *Mackey v. IBP, Inc.*, 167 F.R.D. 186, 200 (D. Kan. 1996) (citation omitted).

Defendant essentially admits that [redacted] But where an interrogatory seeks facts an adverse party's counsel learned, those facts cannot be withheld as work product. *Mackey*, 167 F.R.D. at 200. Defendant has not claimed that the email [redacted] but argues instead that [redacted] is sufficient. Dkt. 77 at 6. But a summary of discoverable facts, containing nothing more than those facts, is not work product,

regardless of why it was created. Thus, the Court should compel Defendant to produce the email.

## II. Categories 2 and 3 (Olson's Texts and the December 2025 Email) Are Not Protected by the Attorney-Client Privilege

The attorney-client privilege protects "'confidential communications by a client to an attorney made in order to obtain legal assistance' from the attorney in his capacity as a legal advisor." *In re Grand Jury Subpoena Duces Tecum Issued on June 9, 1982, to "Custodian of Records"*, 697 F.2d 277, 278 (10th Cir. 1983) (*citing Fisher v. United States*, 425 U.S. 391, 403 (1976)). Because the privilege allows the withholding of relevant evidence, it must be strictly construed and applied "only to the very limited extent that permitting a refusal to testify or excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining truth." *Elkins v. United States*, 364 U.S. 206, 234 (1960); *see also Jackson v. Kennecott Copper Corp.*, 27 Utah 2d 310, 495 P.2d 1254, 1257 (Utah 1972). Likewise, "[s]ince the privilege has the effect of withholding relevant information from the factfinder, it applies only where necessary to achieve its purpose." *Fisher*, 425 U.S. at 403.

The party asserting the privilege bears the burden of establishing it applies – something Defendant has failed to do. Specifically, the asserting party must prove that the communication was made in confidence, to an attorney, within the context of an attorney-client relationship, and for the purpose of obtaining or providing legal advice or legal services. *In re Grand Jury Subpoena*, 697 F.2d at 279; *State v. Vallejo*, 2019 UT 38, ¶ 84, 449 P.3d 39 (Utah 2019); *S. Utah Wilderness Alliance v. Automated Geographic Reference Ctr.*, 2008 UT 88, ¶ 33, 200 P.3d 643 (Utah 2008).

### A. Category 2: [redacted] Texts [redacted] Are Not Privileged

Defendant contends [redacted] texts with [redacted] are privileged because [redacted] This argument fails both factually and legally. The existence of an attorney-client relationship is a threshold requirement for asserting privilege and must be established by the party asserting it. *Braun v. Medtronic Sofamor Danek, Inc.*, No. 2:10-cv-01283, 2013 U.S. Dist. LEXIS 145477, at *2 (D. Utah Oct. 7, 2013). A party's subjective belief that an attorney-client relationship exists is not sufficient. Dkt. 68 at 8. *Cole v. Ruidoso Mun. Sch.*, 43 F.3d 1373, 1384 (10th Cir. 1994). That belief must also be reasonable. *Id.*

Here, Defendant could not have had a reasonable belief that [redacted] and Defendant's contention that [redacted] is completely unsupported. [redacted] When a party's principal admits he did not believe there was an attorney-client relationship, the privilege is necessarily inapplicable. *See In re Grand Jury Proceedings*, 616 F.3d at 1182-83; *Trial Lawyers Coll. v. Gerry Spence's Trial Lawyers Coll.*, No. 1:20-cv-00080-JMC-MLC, 2021 U.S. Dist. LEXIS 255319, at *8 (D. Wyo. June 10, 2021). And there is also no showing that [redacted] *See e.g.*, *United States v. Lopez*, 777 F.2d 543, 552 (10th Cir. 1985) (attorney-client privilege only exists in "circumstances from which it may reasonably be assumed that the communication will remain in confidence.").

Defendant's cases are not to the contrary. It first argues the *Trial Lawyers College* case supports its position that a party's communications with a [redacted] can be privileged, Dkt. 77 at 10, but that case involved an attorney who had previously represented the party in

numerous matters and provided legal advice over multiple years. *Trial Lawyers Coll.*, 2021 U.S. Dist. LEXIS 255319 at *9. Moreover, the attorney had been hired by the party ***for the case at hand***. *Id.* at *5. Here, there is no evidence that [redacted]

Similarly, Defendant relies on *Coe v. Cross-Lines Ret. Ctr., Inc.*, No. 22-2047-EFM-ADM, 2022 U.S. Dist. LEXIS 216065, at *12 (D. Kan. Nov. 30, 2022), where the privilege dispute concerned questionnaires an attorney used to gather information from tenants for a potential class action. *Id.* at *13. The questionnaires were distributed so counsel could provide legal advice to tenants, and the court noted that using questionnaires to collect confidential information from prospective clients is common in large cases. *Id.* Moreover, the tenants completed the questionnaires while seeking legal advice or representation, creating the basis for an attorney-client relationship, *id.* at *13-20, and everyone whose communications were withheld as privileged either retained the attorney or expressed an intent to do so after submitting their questionnaire. *Id.* at *16. The only person who did neither was not included on the privilege log. *Id.* at *4, 16. Thus, this case does not support Defendant's position, and the Court should order [redacted][1]

---

[1] In footnote 5 of its opposition, Defendant attempts to distinguish Plaintiffs' cases concerning these texts, but it omits important facts about each case. *See Motley v. Marathon Oil Co.*, 71 F.3d 1547, 1550-51 (10th Cir. 1995) (mere involvement of an attorney does not render communications privileged, but upholding privilege because employer's counsel established that he acted as legal advisor, the documents contained legal advice, the lists were for his use in giving legal advice, and he did not render business advice); *Breuer-Harrison, Inc. v. Combe*, 799 P.2d 716, 727 (Utah Ct. App. 1990) (while a contract creating an attorney-client relationship may be implied, "a party's belief that an attorney-client relationship exists, unless reasonably induced by representations or conduct of the attorney, is not sufficient to create a confidential attorney-client relationship."); *Bistline v. Parker*, 918 F.3d 849, 867 (10th Cir. 2019) (finding no privilege because plaintiffs showed no subjective understanding they were being personally represented, and their independent actions demonstrated they did not believe they were represented); *State v. Vallejo*, 2019 UT 38, ¶ 80, 449 P.3d 39 (communications with an attorney [redacted] not

**B. Category 3: [redacted] December 2025 Email [redacted] Is Not Shielded by the Attorney-Client Privilege**

In addition to arguing that [redacted] December 2025 email to [redacted] was properly withheld as work product, Defendant invokes the attorney-client privilege as a basis to withhold this communication. Dkt. 77 at 11-12. This fallback argument fares no better, for the same reason: the attorney-client privilege does not shield facts. *Upjohn Co. v. United States*, 449 U.S. 383, 395 (1981) ("The privilege only protects disclosure of communications; it does not protect disclosure of the underlying facts."); *White v. Graceland College Ctr. for Prof'l Dev. & Lifelong Learning, Inc.*, 586 F. Supp. 2d 1250, 1269 (D. Kan. 2008) (no privilege where correspondence concerned factual information and history of lawsuit because "[l]egal advice must predominate for the communication to be protected."). The challenged email contains entirely factual information: [redacted]

In response, Defendant relies on cases recognizing that internal communications among a company's representatives may be privileged when made for the purpose of securing legal advice, Dkt. 77 at 11-12, but these cases involved communications in which employees gathered internal information. For example, in *Nalco Co., Inc. v. Baker Hughes Inc.*, No. 4:09-CV-1885,

privileged despite defendant's claims he sought legal advice); *S. Utah Wilderness Alliance v. Automated Geographic Reference Ctr.*, 2008 UT 88, ¶ 35, 200 P.3d 643 (records not privileged because they were not created for purpose of obtaining or facilitating legal advice, nor were they confidential communications between client and attorney); *Cole v. Ruidoso Mun. Schs.*, 43 F.3d 1373, 1384 (10th Cir. 1994) (party must show "(1) it submitted confidential information to a lawyer and (2) it did so with the reasonable belief that the lawyer was acting as the party's attorney"); *United States v. Evanson*, No. 2:05-CR-805-TC, 2007 U.S. Dist. LEXIS 89618, at *51 (D. Utah Dec. 4, 2007) (party claiming attorney-client privilege must prove its applicability, which is narrowly construed).

2017 U.S. Dist. LEXIS 111127, *5 (S.D. Tex. July 18, 2017), the company's representatives sought counsel's advice on corporate matters, *id.* at *4, and the privilege was deemed inapplicable to underlying facts. *Id.* at *5. Here, Huschke's email recounts the facts of his discussions with a non-party and contains an entirely factual summary.

In contrast, although courts have recognized an attorney's presence or absence is not determinative, the privilege's applicability will be extremely limited where an attorney is not the author or recipient of a communication. *Braun*, 2013 U.S. Dist. LEXIS 122789, at *6; *Cuno, Inc. v. Pall Corp.*, 121 F.R.D. 198, 203 (E.D.N.Y. 1988) (for the privilege to apply to a non-attorney communication it must be "apparent that the communication from one employee to another was for the purpose of the second employee transmitting the information to counsel for advice" or the document itself must "reflect the requests and directions of counsel."); *Adams v. Gateway, Inc.*, No. 2:02-CV-106, 2003 U.S. Dist. LEXIS 28559, at *35-39 (D. Utah Dec. 30, 2003) (communications between non-attorneys must be for the purpose of obtaining legal advice or reflecting requests and directions from counsel).

### C. In the Alternative, an *In Camera* Inspection is Appropriate

In the event the Court believes a review of the contested communications is necessary to resolve this motion, it should conduct an *in camera* review. *See Tanner v. McMurray*, 405 F. Supp. 3d 1115, 1225 (D.N.M. 2019). Such an inspection is particularly appropriate here, given Defendant's characterizations of many of these communications are unsupported [redacted]

## CONCLUSION

For the foregoing reasons, the Court should grant Plaintiffs' Motion to Compel Defendant to Produce Documents Improperly Withheld on the Basis of Privilege.

Dated: August 12, 2026

*<u>/s/ Michele M. Myer</u>*

Bruce R. Ewing
ewing.bruce@dorsey.com
DORSEY & WHITNEY LLP
1301 Avenue of the Americas 13 Fl.
New York, NY 10019
(212) 415-9200

Michele M. Myer
myer.michele@dorsey.com
DORSEY & WHITNEY LLP
111 South Main Street, Suite 2100
Salt Lake City, UT 84111-2176
(801) 933-7360

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 12th day of August 2026, a true and correct copy of the foregoing **PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO COMPEL DEFENDANT TO PRODUCE DOCUMENTS IMPROPERLY WITHHELD ON THE BASIS OF PRIVILEGE** were served electronically upon all counsel of record via the Court's CM/ECF filing system.

*/s/ Jacqueline Ervin*